[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This limited contested dissolution action was heard on February 9 and 14, 1994. Both parties were represented by counsel and testified at trial.
The plaintiff, hereinafter referred to as the wife, and the defendant, hereinafter referred to as the husband, were married on February 24, 1968 in Philadelphia, Pennsylvania. There are two sons issue of the marriage who have reached their majority. John, now 24, has graduated from college and is supporting himself. Jeffrey is 21 and expects to graduate from Southern Connecticut in December, 1995. The parties have lived in Connecticut since 1980, more than one year prior to the commencement of the action; therefore, the court has jurisdiction.
From their own testimony, the court finds that the marriage has broken down irretrievably with no hope of CT Page 2663 reconciliation; therefore, a decree of dissolution is granted pursuant to 46a-40 (c)(1) of the Connecticut General Statutes.
The wife testified that they had a happy and stable marriage for the first twenty years. In 1988 they learned that the husband's mother had developed Alzheimer's disease, and she moved from out of state to an apartment in Bridgeport to be closer to them. Her illness lasted for over a year, and she died on June 8, 1989. This disease placed a great deal of emotional stress on both of them. The wife stated that the mother's illness and death devastated the husband. He began to drink alcohol more than usual, and their arguments grew stronger and more frequent. The husband drew inward and they stopped communicating. They tried marriage counseling for about six months but their marriage did not improve. The husband moved into a separate room, and they lived as strangers.
The court finds that the mother's illness and death caused both parties severe emotional stress and that each party bears some responsibility for the breakdown of the marriage and finds neither of them at fault.
In their claims for relief, and in the excellent briefs filed by the respective attorneys the parties agree that there are two primary issues for the court to decide: (1) the division of the marital home, the only substantial marital asset; and (2) alimony. The parties agree that the home, which has been on the market for three months, should be sold as soon as possible. The husband requests that the net proceeds from the sale be divided equally. The wife requests 65 percent for her and 35 percent for her husband. As to the alimony, the husband requests a mutual, nominal order of $1.00, nonmodifiable for five years. The wife requests lifetime alimony of $225.00 a week.
I. MARITAL HOME
The court may assign to either party all or any part of a marital asset after it has considered all the criteria in46b-81 (c) of the Connecticut General Statutes. The division of property is to give to each party what is fair and equitable. Rubin v. Rubin, 204 Conn. 224, 228 (1987).
In assigning property rights under 46b-81 of the Connecticut General Statutes, the court must consider the length of the marriage, the age, health, station, occupation, amount and CT Page 2664 sources of income, vocational skills, employability, estate and needs of each party, Leo v. Leo, 197 Conn. 1, 5, (1985), and the opportunity of each for the future acquisition of capital assets and income and the contribution of each party to the acquisition, preservation or appreciation in value of the asset.
By agreement, and from their testimony, the court finds that the wife was the primary caretaker for their two sons and the husband for about the first twenty-three years of the marriage. The husband worked full time selling cars during this period. The court finds that they purchased their first home in 1971 in Pennsylvania for $22,000, with a down payment of $2,500 from joint family funds and that about $1,200 in closing costs came from the husband's parents. They completed the purchase with a $20,000 mortgage loan. In 1980 they purchased their second home in Shelton, Connecticut with the equity from the sale of the first home and a mortgage of $50,000. Their present home in Trumbull was purchased in 1988 for $334,900, using the equity from the sale of the Shelton home and a mortgage of $235,000.
The parties estimate the total net equity in the present home to be between $83,000 and $86,000. By mutual agreement, the house has been listed on the market for sale approximately three months. The price has been reduced three times. The parties have agreed to cooperate in selling it as soon as possible. The wife vacated this large home in December, 1993, and the husband is living there alone at present.
It is also undisputed that the husband paid the mortgage, taxes, insurance and maintenance on all three homes entirely from his earnings, since the wife had no earnings during these twenty-three years. She remained at home to care for the children and the husband. Based on these facts, the court finds that the wife's efforts as mother and homemaker were at least equal to his monetary contributions.
In O'Neill v. O'Neill, 13 Conn. App. 300 (1988), at page 311, the court stated as follows:
 "A property division ought to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of CT Page 2665 human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities."
The husband has been an independent car salesman/contractor with Dragone Motors of Bridgeport for the past fourteen years. From the husband's income tax returns from 1988 to 1992, his testimony and the testimony of Mr. Thomas Dragone, President of Dragone Motors, the court finds his gross earnings were between $67,000 and $87,000, and after expenses, averaged about $57,000 for these five years.
In August, 1993, the wife was hired for a full time position by American Frozen Foods at a gross annual salary of $31,000 with a net annual salary of $22,567. On February 10, 1994, the president of the company told her that her annual gross salary would be reduced $5,000 to $26,000. At age 49, and having been out of the work force for about twenty-three years, the wife's prospects for promotion and higher earnings are improbable. As a secretary, her ability to acquire future capital assets is unlikely because her earning power is limited. From 1988 to 1992, the husband earned between $67,000 to $77,000 and is much more likely to regain this earning capacity and acquire future capital assets. Venuti v. Venuti, 185 Conn. 161.
After considering all the statutory criteria under46b-81, the following orders may enter:
1. Real estate — 18 Sky Top Drive, Trumbull, Connecticut (marital home):
 a. The property shall continue to be listed on the market for sale at $334,900, and by agreement, the parties may accept any lesser price.
 b. After deducting all debts, expenses and normal closing costs, the net proceeds from the sale shall be divided equally, fifty (50%) percent to each party. CT Page 2666
 c. From December 18, 1993, the husband became the sole occupant of the marital home, therefore he shall be responsible for the payment of the mortgage, taxes, insurance and normal maintenance, together with any arrearage due for these expenses from that date. Should he fail to pay and keep these expenses current, any arrearage shall be deducted from his 50 percent share of the sale proceeds.
 d. The court shall retain jurisdiction in the event any dispute arises regarding the terms and conditions of this sale.
II. ALIMONY
In determining an award for alimony pursuant to 46b-82, the court is required to consider the length of the marriage, the causes of dissolution, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate of and needs of each of the parties and any award made pursuant to 46b-81, which has almost the same criteria.
The primary purpose of alimony, however, is to continue the duty to support a spouse and not to punish either party. Tobey v. Tobey, 165 Conn. 742, 748 (1974); Leo v. Leo, 197 Conn. 1,5 (1985). The financial circumstances, both actual and potential, are entitled to great weight but the court must consider all the criteria. Valente v. Valente, 180 Conn. 528, 530
(1980). In weighing the circumstances in any given case the court is not required to give equal weight to each of the statutory criteria. Dubicki v. Dubicki, 186 Conn. 709, 716 (1982).
As to the cause of dissolution, the court has previously found neither party at fault. The parties have been married for twenty-six years. The wife, now 49 years old, stayed at home as mother and homemaker for the first twenty-three years of the marriage. She returned to work as a secretary three years ago. The husband is 50 and has been a car salesman during the entire marriage. They are both high school graduates and in general, both enjoy good health. He has high blood pressure and a bleeding ulcer. She had a back operation in March, 1993. Their medical problems have been controlled by medication, whereby both are able to work.
The wife testified that her annual salary of $31,000 was CT Page 2667 reduced to $26,000. The court finds her testimony credible, and her weekly gross salary on her financial affidavit would be reduced from $600 to $500, and with deductions of $166, leaves her a net weekly salary of $334. Her weekly living expenses are listed at $575 for a deficit of $241. She has included an expense of $60 a week for tuition, room and board for their son Jeffrey, age 20, who attends Southern Connecticut College and expects to graduate in December, 1995. She estimated paying an additional $60 a week for his food and medical coverage for a total expense of about $120.
The husband's attorney argued that these expenses are voluntary since the son has reached his majority, she is not liable for them by statute and case law and, therefore, this $120 is available income to her and must be so considered in determining any alimony award. Cariseo v. Cariseo, 190 Conn. 141
(1983). This decision involved a modification and not an original alimony award. It is distinguishable on both the facts and the law. The payment of these expenses will terminate in December, 1995 when the son graduates from college. Between 1988 and 1991, the father contributed over $40,000 for college expenses that enabled their other son John to obtain a college degree. Because of these joint efforts, including the financial contributions, both sons excelled in high school and in college to the credit of both parents.
The argument is also unpersuasive from a practical sense because it could cause this son to end his college studies with only eighteen months before graduation. It would be short-sighted and contrary to the intention and goal of both the parties that both sons graduate from college.
On his financial affidavit, the husband shows a present net weekly average income of $585 for thirteen weeks from November 5, 1993 to January 28, 1994, estimates his tax deductions at $243, giving him a net weekly income of $342, with expenses of $1,206.85. His housing expenses are about $628, over one-half of the total expenses. He admitted no present need for this large ten room home and that it should be sold to relieve him of this substantial financial burden. His wife has rented a small apartment for $625 a month and he could do likewise after the house is sold. His present monthly gross earnings are $2,500 a month compared to $5,400 a month in 1993. He attributed this substantial decrease to the general economic recession. His earnings for the past fourteen years have been substantially CT Page 2668 higher. His income tax returns from 1988 to 1992 show his gross earnings ranged from $67,000 to $87,000 and after deducting his business expenses his net average earnings were about $57,000 a year.
The court finds that even the net earnings on his tax returns are misleading and that his available income is much higher. For example, during the five years from 1988 to 1992, he deducted an average expense of $13,200 a year for gas and oil for his automobile and $650 for washing it. Being in the business of buying and selling used cars, the court finds this amount unusually high. This amount may be acceptable to the tax authorities; however, it is not determinative in deciding a fair alimony award. He continued to draw $750 a week from Dragone Motors even during these past thirteen weeks.
Mr. Thomas Dragone testified that car sales should improve to past levels this year. Based on his net earnings from 1988 to 1992, the court finds his net weekly earning capacity to be $1,100 a week, or about three times more than his wife's.
Based on these findings, the husband is able to support himself and his claim for $1.00 a year alimony for five years is denied.
The husband's main argument for a similar five year $1.00 per year alimony award to the wife is that she has been able to support herself during the past seven months. With the $5,000 reduction in her annual salary, the court finds that her weekly expenses exceed her income by about $241. And even should the court have accepted the argument that college and maintenance expenses for the son Jeffrey should be added to her income, the wife would still have a shortfall of about $120.00 a week.
Need is only one of the factors the court must consider in determining alimony pursuant to 46b-82. The court finds that the wife has a much more limited earning capacity than the husband. She has worked as a secretary for the past three years and only for the past seven months with her present employer, American Frozen Foods. She now earns a gross salary of $26,000. Her prospects for higher earnings in the future are much more limited than his. She is vulnerable to being laid off before other employees with more seniority. On the other hand, he has worked for over twenty-four years selling cars with gross earnings ranging from $67,000 to $85,000 during the past five years. CT Page 2669
The traditional purpose of alimony is to meet a continuing duty to support a spouse. Blake v. Blake, 211 Conn. 485
(1989). An award of time limited alimony, also referred to as rehabilitative alimony, is usually granted to allow a spouse time to gain employment skills to become self-sufficient or to provide interim support until a future event that will enable a spouse to be self-sufficient. In 1990, the wife renewed and improved her secretarial skills. She attended two eight hour night courses at Sacred Heart University. She does not need more time to improve her secretarial skills. She needs additional financial support to meet her living expenses. She has no plans to attend college or start a business. And her 50 per cent share of the proceeds from the sale of the house estimated between $41,500 and $43,000 will not enable her to be self-sufficient. These proceeds may give her a little security at best, since she has no other assets. The facts in this case do not warrant a time limited alimony award. Roach v. Roach, 20 Conn. App. 500 (1991); Ippolito v. Ippolito,28 Conn. App. 745, 751-755 (1992).
Although the husband has no pension benefits, the wife may receive a $46 a month pension from Howe Furniture Company upon retirement fifteen years from now. The husband should receive maximum social security benefits, having paid FICA taxes for over thirty years. The wife has only worked for three years and would receive much less from social security.
Based on these findings and having considered the statutory factors in 46b-82 (the alimony statute), 46b-62
(attorney's fees) and the prior division of the marital home under46b-81 the financial affidavits, all the testimony and evidence, the following orders may enter:
 1. Alimony: Beginning October 1, 1994, the husband shall pay the wife alimony of One Hundred Fifty ($150) Dollars per week until the death of either party, the wife's remarriage or she cohabitates pursuant to 46b-86 (b) of the Connecticut General Statutes.
 2. Insurance: The husband shall name the wife irrevocable beneficiary under his $100,000 life insurance policy with Travelers as shown on his financial affidavit as long as the alimony obligation remains in effect.
3. Attorney's Fees: The husband shall contribute Three Thousand CT Page 2670 ($3,000.00) Dollars towards the wife's attorney's fees. Since neither party has liquid or cash assets of more than $500, this fee shall be paid from the husband's 50 percent share of the proceeds from the sale of the marital home or by October 1, 1994, whichever is sooner. The court considered 46b-62 as well as the husband's greater earning capacity in granting this award. Emanuelson v. Emanuelson, 26 Conn. App. 527, 532 (1992).
 4. Health Insurance: Each party shall maintain his or her own health insurance.
 5. Liabilities: The wife shall be liable for the Chase Mastercard expense shown as $450 on her financial affidavit, and the husband shall be liable for all other debts shown on his affidavit including all income tax liabilities.
 6. Income Taxes: The wife shall have the option to file a joint return for 1993.
 7. Condo Unit (1 OR, 2600 Park Avenue, Bridgeport, CT): The husband shall retain all interest in, this real estate inherited from his mother.
 8. Personal Property: The husband shall retain two (2 paintings and the jewelry inherited from his mother.
 All other personal property shall be divided by the parties. If a dispute arises over the division of said personal property, they shall contact Family Relations for mediation. If there is no resolution, either party may petition the court for relief.
ROMEO G. PETRONI, JUDGE