## SANDRA B. BILLINGS *v.* GEORGE W. BILLINGS III
### (AC 18187)

O'Connell, C. J., and Foti and Spear, Js.

Argued April 20—officially released July 6, 1999

*Brock T. Dubin,* for the appellant (defendant).

*Alice C. Mack,* for the appellee (plaintiff).

FOTI, J. The defendant, George W. Billings III, appeals from the judgment of the trial court denying his motions for contempt and modification and granting the plaintiff's motion for contempt. The defendant claims that the trial court improperly (1) calculated the value of his interest in the marital home, (2) determined that his obligation to maintain life insurance was a property settlement and not alimony, (3) denied his motion for modification and (4) found him in wilful contempt. We reverse in part and affirm in part the judgment of the trial court.

The following facts are relevant to this appeal. The plaintiff and the defendant were married in 1967 and have two children. The defendant was an attorney in Norwalk and a partner in the law firm of Billings & Reid until 1985, when he suffered a stroke severely limiting his earning capacity.

On November 7, 1986, the trial court rendered a judgment of legal separation. The judgment awarded both parties $1 per year as alimony. The judgment further specified that the marital home was to be sold and the proceeds divided as follows: "The plaintiff may continue to occupy the marital home until June 1, 1992, at which time the real estate shall be placed on the market for sale. . . . The price shall be by agreement and failing agreement, a court of competent jurisdiction shall fix the price and other terms of sale. Upon sale, after payment of the mortgage, broker's fees and closing costs, the net proceeds shall be divided seventy-five percent (75%) to Plaintiff and twenty-five percent (25%) to Defendant."

The judgment also provided: "The defendant shall keep three life insurance policies in force naming Plaintiff as primary beneficiary of $100,000.00 and naming the two children as primary beneficiaries of the remaining

$150,000.00. He shall furnish proof to Plaintiff that the policies are in force with the beneficiaries maintained, as to Plaintiff unless she dies remarries or cohabits and as to the minors until they are both eighteen (18) years of age."

A stipulation to modify the judgment entered into on February 12, 1988, provides: "From the first date of the payment on the mortgages, after the Judgment rendered in the above-entitled matter, the plaintiff shall be entitled to a credit for the principal reduction on said mortgages at the time the property is to be sold and the net proceeds divided." The stipulation also extended the date by which the marital home must be sold until September 1, 1996. The stipulation also provided that the defendant name the children as beneficiaries on the life insurance only "until the last child completes his or her post high school education." Additional facts will be set forth where necessary.

I

The defendant claims that the trial court improperly calculated the value of his interest in the marital home. We agree.

"Before turning to the merits of the parties' arguments, we first set forth principles that will assist us in resolving this issue. To begin, it is well settled that judicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the court correctly applied the law and could reasonably have concluded as it did. . . . It is the sole province of the trial court to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Citations omitted; internal quotation marks omitted.) *W.* v. *W.*, 248 Conn. 487, 495, 728 A.2d 1076 (1999).

The trial court found the following facts. "In January, 1994, the parties agreed to refinance the marital home.

On January 14, 1994, the [defendant] quitclaimed his interest in the home to the [plaintiff] and the [plaintiff] paid the [defendant] $15,000 as an advance on his 25 percent interest. By letter dated August 25, 1996, the [defendant] advised the [plaintiff] she owed him $28,833.80 for his 25 percent interest. The [plaintiff] replied, in a letter to him dated September 6, 1996, that she was owed $4664.79, according to her mathematical calculations."[1] In 1996, at the time the plaintiff was to sell the marital home, it had a stipulated value of $220,000. The house was encumbered by two mortgages.

While both parties utilized different methods to compute the value of the interest in the property, the court utilized yet a third method holding: "The plain language in the judgment requires payment of the mortgages, which totaled $44,644.79, before the 75 percent–25 percent split in the net proceeds is computed. This amount must first be deducted from the agreed market value of $220,000, which leaves a net balance of $175,335.21.

[1] The defendant's calculations are as follows:

| | |
|---|---|
| Stipulated value of property | $220,000.00 |
| Less payment of first mortgage | $33,231.33 |
| | $186,768.67 |
| Less payment of second mortgage | $11,433.46 |
| | $175,335.21 |
| Less 75 percent to wife | $131,501.41 |
| Equals 25 percent to husband | $43,833.80 |
| Less moneys paid by wife | $15,000.00 |
| Total | $28,833.80 |

The plaintiff's calculations are as follows:

| | |
|---|---|
| Stipulated value of property | $220,000.00 |
| Defendant's 25 percent interest | $55,000.00 |
| Less principal reduction on first mortgage | $33,231.33 |
| | $21,768.67 |
| Less principal reduction of second mortgage | $11,433.46 |
| | $10,335.21 |
| Less payment on account | $15,000.00 |
| Over payment | $4664.79 |

The [plaintiff's] 75 percent net share amounts to $131,501.41, and the [defendant's] 25 percent net share amounts to $43,833.80, after payment of the mortgages." We agree with the trial court's calculations up to this point in its analysis. We conclude, however, that the trial court miscalculated the value of the parties' interests and misinterpreted the judgment and stipulation.

The stipulation states: "From the first date of the payment on the mortgages, after the Judgment rendered in the above-entitled matter, the plaintiff shall be entitled *to a credit* for the [principal] reduction on said mortgages at the time the property is to be sold and the net proceeds divided." (Emphasis added.) We must determine if the trial court properly interpreted the language of the stipulation. The stipulation is essentially a contract between the defendant and the plaintiff. It is axiomatic that where the parties do not define a term, we look to the plain meaning of the words. "Credit" is defined as "the acknowledgement of payment on a debt by entry of the amount in an account"; Webster's New World Dictionary (2d Ed.); or "a sum deducted (from an account owed) or added (as to a bank account) in making an adjustment." Id. "Credit" also has been defined as "a component of a journal entry which increases revenues, liabilities, and equity; and decreases assets and expenses." Black's Law Dictionary (6th Ed. 1990). The term "credit" clearly refers to mortgage payments made by the plaintiff. It does not connote that the plaintiff can receive a bonus or other remuneration for amounts she has not paid.

The trial court held that the plaintiff was entitled to an additional credit of $24,039.21, the amount that she testified as having paid on the mortgage from December, 1986, through January, 1994. The trial court deducted the $24,039.21 from the $28,833.80 that the defendant claims is his proper share of the marital home. Thereby, the trial court awarded the defendant

$4794.59. We fail to see the logic in the trial court's calculations. The trial court, in essence, gave the plaintiff credit for the payment of the two mortgages totaling $44,664.79, to which she is clearly entitled. The trial court also gave the plaintiff credit for an additional $24,039.21, which has already been included in the original deduction of $44,664.79. Both parties' calculations take into account the mortgage payments of $44,664.79, which are the total payments on the mortgages from 1986 to 1996. Neither party's original calculations considered reducing the defendant's share by an additional $24,039.21. In fact, at oral argument, the plaintiff admitted that she was, in essence, receiving a "double credit" in the form of the additional $24,039.21. We conclude that the trial court's interpretation of the stipulation was incorrect.

The plaintiff's calculation is incorrect because it calculates the defendant's share of the property before deducting the mortgage payments as required in paragraph six of the judgment. Accordingly, we conclude that the defendant's calculation is correct and reject the trial court's calculation, as it is unsupported by the language of the judgment and stipulation. The defendant is entitled to $28,833.80 representing the balance of his 25 percent share of the marital home.

II

The defendant next claims that the trial court (1) did not have the authority to determine that the insurance policy was part of a property settlement and (2) improperly determined that the defendant's obligation to maintain a life insurance policy for the benefit of the plaintiff was intended as a property settlement and therefore nonmodifiable. We disagree.

A

The defendant's claim that the trial court lacked authority to decide, sua sponte, that the insurance policy was part of a property settlement must fail.

General Statutes § 46b-86 (a)[2] specifically allows for the modification only of "alimony or support or an order for alimony or support pendente lite . . . ." It further states that the trial court does not have the authority to modify a property settlement entered into pursuant to § 46b-81.[3] Section 46b-86 (a) gives the trial court only limited jurisdiction to modify a judgment. "By its terms, the statute deprives the Superior Court of continuing jurisdiction over that portion of a dissolution judgment providing for the assignment of property of one party to the other party under General Statues § 46b-81." *Bunche* v. *Bunche*, 180 Conn. 285, 289, 429 A.2d 874 (1980); see also *Woodward* v. *Woodward*, 44 Conn. App. 99, 101, 686 A.2d 1010 (1997); *Croke* v. *Croke*, 4 Conn. App. 663, 665, 496 A.2d 235 (1985). "The terms of § 46b-86 (a) cannot be expanded to include matters beyond the court's jurisdiction." (Internal quotation marks omitted.) *Miner* v. *Miner*, 48 Conn. App. 409, 415, 709 A.2d 605 (1998).

"[W]hen the absence of jurisdiction is brought to the attention of the court, cognizance of that fact must be taken and the matter determined before it can proceed further in the case. . . . In whatever manner such an issue comes to the attention of a court, it must be

---

[2] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party . . . . This section shall not apply to assignments under section 46b-81 or to any assignment of the estate or a portion thereof of one party to the other party under prior law. . . ."

[3] General Statutes § 46b-81 (a) provides: "At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect."

addressed, even if the court must act sua sponte in order to do so." (Citation omitted; internal quotation marks omitted.) *Pinder* v. *Pinder*, 42 Conn. App. 254, 258, 679 A.2d 973 (1996). The determination of whether the insurance policy was or was not part of a property settlement invokes the jurisdiction of § 46b-86 (a). The trial court does have the authority to determine, sua sponte, whether an award falls within the scope of § 46b-86 (a).

Having concluded that the trial court did have the authority to decide that the insurance policy was part of a property settlement, we now determine if it properly did so.

B

The defendant claims that the trial court improperly characterized the insurance policy as part of a property settlement. We disagree.

The judgment and stipulation are silent as to whether the insurance policy is a guarantee for alimony as the defendant argues or a property settlement as the plaintiff argues. "When the decree is silent as to the characterization of any order, an analysis of the structure of the dissolution decree is highly instructive; *Blake* v. *Blake*, 211 Conn. 485, 497, 560 A.2d 396 (1989); and an ambiguous order should be examined in the context of the entire decree. *Viglione* v. *Viglione*, 171 Conn. 213, 216, 368 A.2d 202 (1976). These rules must be viewed against the well recognized principle that because every family situation is unique, the trial court drafting a dissolution decree has wide discretion to make suitable orders to fit the circumstances." *Passamano* v. *Passamano*, 228 Conn. 85, 91, 634 A.2d 891 (1993). "The difference between an assignment of a specific portion of an estate and alimony is in their purposes. Clark, Domestic Relations (1968) § 14.8. The purpose of property assignment is equitably to divide the ownership of

the parties' property. . . . On the other hand, periodic and lump sum alimony is based primarily upon a continuing duty to support." (Citation omitted; internal quotation marks omitted.) *Blake* v. *Blake, supra,* 497–98.

We begin by examining the judgment's structure. Paragraphs one and three of the judgment specifically deal with the parties' alimony and support obligations. Paragraph one orders each party to pay $1 a year in alimony. Paragraph three of the judgment provides in relevant part: "The defendant shall continue to deliver the Social Security Disability income to Plaintiff in lieu of a child support order."

Paragraph five of the judgment awards possession of the marital home to the plaintiff. Paragraph six divides the proceeds from the sale of the marital home. Paragraph seven requires the defendant to maintain the life insurance policies. Paragraphs eight through fifteen each deal with a property interest, i.e., the family car, real estate, the defendant's IRA account, the plaintiff's pension or stock.

The judgment is structured so that the alimony and support obligations of the parties are dealt with in paragraphs one through four. Beginning in paragraph five, the judgment divides the marital and nonmarital property. There is no further discussion of alimony or support obligations after paragraph four.

The defendant also claims that because the judgment provided for insurance coverage only until the plaintiff "dies, remarries or cohabits," the award is modifiable. We are not persuaded. The language used in the judgment is similar to the language used to convey a determinable fee. We recognize that the judgment did not create a determinable fee. We are merely looking at the language and comparing it to language used to convey *property* in fee. The fact that the life insurance policy provision has attached conditions terminating the

defendant's obligation does not mean that it becomes modifiable pursuant to § 46b-86 (a).

The defendant claims that because the stipulation modified his obligation to maintain insurance,[4] the obligation was meant to be modifiable pursuant to § 46b-86 (a). We are not persuaded. There is no aspect of law of which we are aware, nor has the defendant provided any authority, that supports the proposition that two parties cannot, between themselves, modify a property settlement. That, however, does not mean that the trial court may modify it pursuant to § 46b-86 (a).

After reviewing the structure and language of the judgment and the stipulation, we conclude that the trial court properly held that "the $100,000 policy was intended as a property settlement to benefit the [plaintiff] made pursuant to § 46b-81; therefore this award is nonmodifiable."

### III

The defendant next claims that the trial court improperly denied his motion for modification, filed pursuant to § 46b-86 (a), requesting termination of his obligation to maintain life insurance for the benefit of the plaintiff. We disagree.

Section 46b-86 (a) specifically allows for the modification of only "alimony or support or an order for alimony or support pendente lite . . . ." Because we concluded in part II that the trial court properly characterized the life insurance policy as a property settlement, and not as alimony, we conclude that the trial court was without jurisdiction to modify the order and properly denied the defendant's motion for modification.

---

[4] Paragraph one of the stipulation provides: "The defendant shall name the children as beneficiaries of his life insurance until the last child completes his or her post high school education. Post high school education shall include graduate or medical school."

## IV

The defendant claims that the trial court improperly found him in wilful contempt for failing to maintain a life insurance policy naming the plaintiff as beneficiary. We disagree.

"Contempts of court may be classified as either direct or indirect, the test being whether the contempt is offered within or outside the presence of the court. . . . The defendant's failure to comply with the support order is, therefore, an indirect contempt because it occurred outside the presence of the trial court.

"[A] finding of indirect civil contempt must be established by sufficient proof that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure as in ordinary cases." (Citations omitted; internal quotation marks omitted.) *Sgarellino* v. *Hightower*, 13 Conn. App. 591, 595–96, 538 A.2d 1065 (1988). A finding of contempt is a factual finding. *Bunche* v. *Bunche*, 36 Conn. App. 322, 324, 650 A.2d 917 (1994). We will reverse that finding only if we conclude the trial court abused its discretion. Id., 325.

The trial court found: "There was no evidence that any of the conditions necessary to discontinue the $100,000 life insurance policy which benefitted the wife . . . had occurred. . . . [The defendant] was able to maintain a total of $250,000 of life insurance from 1986 to 1996. He was able to pay the premiums during the time his son Derek attended college from 1992 to 1996 when his earning capacity was limited to earning $3500 a year. He stopped paying the premiums on the $100,000 policy unilaterally in 1996 without ever notifying the wife. He estimates his earnings as an attorney in 1997 to be about $7500. Furthermore, his financial affidavit on file lists a home in Vermont valued at $180,000 which is unencumbered."

The defendant now claims that he stopped paying the premiums on the life insurance policy because he could not afford the payments. He also claims that he is now uninsurable because of his disabling condition. The defendant claims that in order for him to obtain insurance, he would have to pay premiums of $9600 per year as opposed to the $1400 per year that he was paying, yet the trial court did not make this factual finding. The trial court specifically found that the defendant was able to pay his premiums when his income was only $3500 per year. The defendant, as the trial court found, unilaterally allowed the policy to lapse. There is no evidence that he made any effort to inform the plaintiff or the trial court that the policy was going to lapse. He did not file a motion for modification until *after* the policy had lapsed. The judgment specifically stated that the defendant was to maintain the policy and provide proof of its effect to the plaintiff. He failed to do so.

The fact that the defendant now claims financial hardship did not create an "inability of a party to obey an order of the court, without fault on his part . . . ." *Mallory* v. *Mallory*, 207 Conn. 48, 57, 539 A.2d 995 (1988). We find the defendant's claim of financial hardship especially troubling because the trial court found that the defendant was able to maintain $250,000 of life insurance on an income of only $3500 a year, but when the defendant's income *increased* to $7500 per year, he was not able to maintain only $100,000 of life insurance. There was sufficient evidence to find that the defendant wilfully violated the court order. The trial court did not abuse its discretion in holding the defendant in wilful contempt for failing to maintain the life insurance policy.

The judgment is reversed only as to the calculation and distribution of the value of the parties' interest in

the marital home and the case is remanded with direction to render judgment for the defendant in the amount of $28,833.80. The remainder of the judgment is affirmed.

In this opinion the other judges concurred.

