[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The court held a hearing on the plaintiff's motion for contempt dated July 16, 1999, on November 15 and 16, and December 6 and 14, 1999, during which time four of the following issues were raised:
1. Child support arrearage owed by the defendant and wilful contempt.
2. Alimony arrearage owed by the defendant and wilful contempt.
3. Non-payment of life insurance premiums by the defendant and wilful contempt.
4. Modification of the defendant's child support obligation for the minor child.
As to the first issue, the child support order entered at the time of judgment on March 13, 1998, required the defendant to pay child support of $335 per week, plus $57.70 per week for health insurance, for a total support order of $392.70 per week. The parties agreed that during the ninety week period from the date of judgment to November 30, 1999, the defendant's total support obligation was $35,343, and that he had paid only $26,643, leaving an arrearage of $6,700.
The following facts are relevant to this issue. The defendant is now seventy-seven years of age and is suffering from Alzheimer's disease. He receives $1,500 per month, or $1,800 annually, from social security and his only other income comes from royalties received from a musical composition he has written in his career. The primary source is derived from royalties from the song "Do You Hear What I Hear," which fluctuates year to year depending on how many times the song is played. For the five years prior to the judgment, his annual average income from royalties was $60,000 per year, and the balance of $18,000 came from social security. From the date of judgment to December 31, 1998, a nine month period, his royalty income decreased by more than 50 percent to about $28,000 for that year. This decrease in income was the primary reason for the child support arrearage. To CT Page 145 meet his expenses in 1998, he had to borrow $12,000 from Susan Spiegel, his live-in companion.
In addition to the child support, he is required to pay the plaintiff 35 percent of all royalty income he receives. The court found the testimony of Ms. Spiegel credible that he made this 35 percent alimony payment promptly. Based on these facts, and on her testimony, the court does not find the defendant in wilful contempt of the child support order.
The court, however, does find the defendant to owe an arrearage of $6,700 in child support and orders him to make monthly payments of $778 beginning in July, 2000, the month after the minor child attains his majority.
The second issue involved a claim by the plaintiff that the defendant owes her an alimony arrearage of $2,308.20 which the defendant denied. The defendant admitted he received a $10,000 royalty payment in 1998, which $3,500 was owed to the plaintiff pursuant to the alimony order. There was no dispute that the defendant paid the plaintiff $1,191.80, however, there was contradictory testimony and evidence as to the payment to balance of $2,308.20. From the evidence presented, the court finds the plaintiff failed to prove her claim. From the defendant's Exhibit A, a letter from the First Union Bank of Ridgefield, the court finds that the $2,308.20 was directly deposited to the plaintiff's account at this bank.
There is no alimony arrearage due the plaintiff, and therefore the defendant is not in wilful contempt.
The third claim involved the defendant's failure to continue the payment of his premiums of an existing $100,000 life insurance policy which caused it to be cancelled. Paragraph 6 of the judgment required him to designate the plaintiff the irrevocable beneficiary of his life insurance policy until his death or March 10, 2003, whichever shall occur first. In paragraph 4 of the judgment, he or his estate (emphasis added) was required to pay the plaintiff 35 percent of his royalty income which was non-modifiable as to amount and time.
The defendant averages about $60,000 annually from his royalty income. During 1998, when this income was reduced to about $28,000 for the year, the defendant was unable to pay the premiums and the policy was cancelled. This $100,000 in life CT Page 146 insurance was a ten year term policy terminating on March 10, 2003.
The pivotal issue to be decided is whether this $100,000 life policy was intended to secure the alimony award in the judgment, and modifiable under § 46b-86 of the Connecticut General Statutes, or was it intended to be a property settlement under § 46b-81, therefore non-modifiable. The court finds no language in the judgment as to this life insurance which would lead it to believe it was intended to secure the alimony award. The plaintiff was entitled to alimony of 35 percent of the royalty income he received during her lifetime. The defendant, or his estate, would be liable to pay alimony even after his death. Furthermore, the defendant was entitled to receive the royalties on his songs for seventy-five years after his death. Based on these acts, it would be unnecessary to secure the alimony with life insurance.
As a matter of law, the court finds that the life insurance under paragraph 6 of the judgment was a property distribution pursuant to § 46b-81 of the Connecticut General Statutes. In the event the defendant dies prior to the expiration of the policy on March 10, 2003, his estate would be liable to pay the $100,000 to the plaintiff. Should he live beyond March 10, 2003, there would be no obligation to the plaintiff under the expired policy. For cases holding that a life insurance policy is a property settlement and nonmodifiable. Crowley v. Crowley,46 Conn. App. 87, 97, 98 (1997); Billings v. Billings,54 Conn. App. 142 (1999); Lake v. Lake, 49 Conn. App. 89 (1998).
The court does not find the defendant in wilful contempt for failure to maintain the payment of premiums on this $100,000 policy. His royalty income for 1998 was reduced by more than half, therefore he was financially unable to pay.
At the time of judgment, child support of $393 per week was ordered pursuant to the child support guidelines then in effect. Under the current child support guidelines effective August 1, 1999, and based on his present income, as computed in his child support worksheet, the court finds his child support obligation to be $203 per week, plus the social security benefit to the child of $83, for a total child support obligation of $286 per week, plus 76.1 percent of all unreimbursed medical expenses.
This reduction of $107 per week from the present order of $393 CT Page 147 is a substantial change in the defendant's financial circumstance to warrant a modification pursuant to § 46b-82 of the Connecticut General Statutes.
The defendant's motion for modification dated September 27, 1999 is granted, effective December 1, 1999.
An evidentiary hearing was held on December 30, 1999 on whether to order either parent to pay a reasonable attorney's fee to the other in accordance with their respective financial abilities after considering the criteria in § 46b-82 of the Connecticut General Statutes.
The plaintiff's attorney, Edward Kanowitz, testified that his fee of $8,500 was reasonable based on spending thirty-four hours at $250 per hour in representing the plaintiff on this contempt motion. His position was confirmed by John Jowdy, an attorney, who has a general practice of law in Danbury, including handling family matters.
The defendant's attorney, Heidi Winslow, also testified she spent 13.75 hours on this motion and at $200 per hour her bill was $2,683.33 and urged the court to have the plaintiff pay it.
The court has reviewed the current financial affidavits of the parties, and the plaintiff's earned income is about $170 per week from self-employment as an artist. She listed total assets of $73,922 with about $5,300 in savings. The defendant lists net weekly income of $975, or about five times more than the plaintiff, and has $4,076 in his checking account. He or his estate should be receiving about $60,000 per year from royalties for seventy-five years after his death.
After reviewing the criterial in § 46b-81 of the Connecticut General Statutes, the court finds the defendant to have a much greater ability to pay a reasonable attorney's fee to Attorney Kanowitz, and orders him or his estate to pay him an attorney's fee of $4,000 plus costs of $47, for a total fee of $4,047. This fee shall be paid him in three annual installments of $1000 each, and a fourth of $1,047, beginning on or before January 1, 2001, and annually thereafter or before January 1st until this fee is paid in full.
The defendant's request for attorney's fees of $2,683.33 is denied. CT Page 148
Romeo G. Petroni, Judge Trial Referee