[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO REARGUE
This is a memorandum of decision on the defendant's Motion to Reargue the plaintiff's Amended Post-Judgment Motion for Contempt. This motion to reargue is dated February 2, 2000 and is addressed to the court's decision of January 19, 2000, rendered from the bench, on the plaintiff's Amended Post-Judgment Motion for Contempt dated January 14, 2000.
 FACTS CT Page 6848
After more than three weeks of trial, the undersigned dissolved the 31 year marriage of the parties. The Memorandum of Decision, issued on December 3, 1997, contained 41 separate financial and other orders. Due to the complicated nature of the issues, this court first issued a Memorandum of Decision consisting of an introductory two pages as well as the six page Order section. The court immediately, sua sponte, ordered itself to articulate the decision. On March 31, 1998 an articulated decision was filed, which incorporated the Memorandum of Decision of December 3, 1997. The Orders in both decisions are identical except for one paragraph. It is that one paragraph that is the subject of this motion.
This motion relates to the disposition of dividend equivalent and/or dividends on shares of restricted stock of General Electric Corporation. Paragraph 18 of the December 3, 1997 Memorandum of Decision reads as follows in its entirety;
 The defendant holds 199,000 shares of restricted stock in General Electric Corporation that were granted him at various dates. The restrictions will not start to lapse until June 1998. Exhibit 70, note 13. The 199,000 shares of restricted stock, "dividend equivalent" equal to the current dividend paid by GE on its common stock. Exhibit 63. Tab 14, Page 2 discloses these dividend equivalents to be $396,000/year. The plaintiff is awarded one-half of the "dividend equivalent" and/or dividends on the entire 199,000 shares of GE restricted stock to be paid if and when received by the defendant. The defendant is awarded the remaining one-half of the "dividend equivalent" and/or dividends as well as the 199,000 shares of GE restricted stock. This obligation of the defendant and/or his estate will end on the wife's death. This payment cannot otherwise be modified, terminated or suspended.
The court made two changes in the 41 paragraph financial orders both in this paragraph 18 in its articulated Memorandum of Decision dated March 31, 1998. The first, was the correction of a typographical error in which dividend had originally been spelled as "divided." The second was the addition of two sentences added to the end of the above original paragraph 18. The two additional sentences are:
 In the event the defendant sells said shares, the defendant shall pay to the plaintiff periodic alimony CT Page 6849 in the amount equivalent to said dividends and/or dividend equivalents terminating only upon the plaintiff's death. In the event GE issues new stock or splits its stock, the 199,000 shares will be proportionately increased and so will the periodic alimony payments and/or "dividend equivalent" payments and/or dividends.
Both parties appealed the court's decision. The defendant filed an appeal concerning issues of alimony and withdrew that claim well before April 4, 2000. The Appellate Court heard argument on the plaintiff's appeal on April 4, 2000. Upon information and belief, the issues with regard to paragraph 18, in the fashion as argued before this court, are not a subject of the plaintiff's appeal.
An issue arose concerning the method and amount of payment of the dividend equivalent and/or dividends post-judgment. As a result of this dispute, a number of motions were filed, culminating in the January 14, 2000 Motion for Contempt. The plaintiff claims that the defendant has failed to pay the one-half of the dividend equivalent and/or dividends which were actually received by the defendant post-judgment. The defendant claims that he has tendered the one-half after calculating his tax obligation and the plaintiff has rejected that tender. The issues were framed by the respective motions, briefs and arguments of counsel.
On January 19, 2000, the January 14, 2000 Motion for Contempt, along with other previously filed motions, were heard by this court. The defendant requested a continuance for the purpose of being able to brief and prepare the issues raised in the January 14, 2000 Motion for Contempt. This court denied the motion on the basis that it was virtually identical to a motion dated January 6, 2000 and thus the parties should be prepared. After taking testimony and hearing oral argument, the court found that the defendant was not in contempt and then treated the motion as a Motion to Compel. The court noted that the parties had voiced a misunderstanding as to the intent of the court's paragraph 18 order. The court then found that $151,652 was the dividend equivalent and/or dividends that were due the plaintiff, Lorna Wendt, by the defendant, Gary C. Wendt, for the periods 1998 and 1999. The court did not make any findings concerning any dividend equivalent and/or dividends paid or to be paid in the year 2000. Acting on the Motion for Contempt dated January 14, 2000, the court denied the relief of a finding of contempt, denied the award of attorney's fees and/or interest, and ordered that the defendant pay to the plaintiff the sum of $151,652 for the dividend equivalent and/or dividends for 1998 and 1999 in accordance with paragraph 18 of its Order. CT Page 6850
The defendant filed a Motion to Reargue which this court granted on February 2, 2000 and scheduled the reargument for April 25, 2000. The parties briefed the issue, appeared and presented oral argument.
 CLAIMS OF THE PARTIES
The defendant claims that paragraph 18 of the December 3, 1997 order is a property distribution order and that in the March 31, 1998 articulation, this court converted a property order into a periodic alimony order by adding two sentences concerning alimony and stock split. The defendant claims this was done sua sponte, without either a motion to open the judgment or a motion to modify, and thus, is violative of the court's subject matter jurisdiction. The plaintiff claims that the March 31, 1998 articulation was both sua sponte and in response to a Motion for Articulatton. filed by the plaintiff. The plaintiff's position is that paragraph 18 distributed property in the form of 199,000 shares of restricted stock to Gary C. Wendt, and divided the stream of income of dividend equivalent and/or dividends equally between the parties. The dividend equivalent and/or dividend distribution in the original December 3, 1997 order was in the nature of an order of periodic alimony. The March 31, 1998 articulation did not change the order, only clarified it. Neither party reargued the mathematical calculations or any of the facts obtained by the testimony from an accountant at the January 19, 2000 hearing.
 DISCUSSION OF LAW
The power of the Superior Court to order property distribution and/or alimony is determined by the statute. Dubicki v. Dubicki, 186 Conn. 709,713-15 (1982). The Superior Court has no authority to modify an award of property distribution. Croke v. Croke, 4 Conn. 663, [4 Conn. App. 663], 664-65 (1985). "At the time of entering a decree or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other." General Statutes § 46b-81 (a). The trial court does have statutory authority to modify a payment of periodic alimony. "Any final order for the periodic payment of permanent alimony . . . may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party. . . . This section shall not apply to assignment under section 46b-81 . . ." General Statutes § 46b-86 (a) A court, therefore, has no statutory authority to modify a property distribution award and convert it into an alimony award. "The Superior Court has jurisdiction to assign property in connection with a dissolution of marriage action, in accordance with § 46b-81, but unlike periodic CT Page 6851 alimony or child support, which usually are modifiable, the assignment of property is nonmodifiable. Bunche v. Bunche, 180 Conn. 285, 289 (1980);Berg v. Berg, 24 Conn. App. 509, 513, cert. denied, 219 Conn. 908 (1991)."Taylor v. Taylor, 57 Conn. App. 528, 533 (2000).
"It is an acknowledged principle of . . . every court in the world, that not only decisions, but every thing done under the judicial process of courts, not having jurisdiction, are, ipso facto, void." Broaca v.Broaca, 181 Conn. 463, 468 (1980); Robertson v. Robertson, 164 Conn. 140,145 (1972) (Affirming the trial court's action to open and modify a judgment rendered without jurisdiction even though the collateral attack on the judgment occurred-after more than four years from the rendition of the original judgment). A court order which is void because the court had no subject matter jurisdiction can be attacked at any time by any party despite the failure to take an appeal, despite the passage of years and despite the failure of the parties to attack the issue. The issue of subject matter jurisdiction voiding a judgment can be raised by the trial court sua sponte. Kenworthy v. Kenworthy, 180 Conn. 129, 131 (1980).
"When the absence of jurisdiction is brought to the attention of the court, cognizance of that fact must be taken and the matter determined before it can proceed further in the case . . . In whatever manner such an issue comes to the attention of a court, it must be addressed, even if the court must act sua sponte in order to do so . . . The delay in this case of more than three years in raising the jurisdiction issue is not a bar to its consideration, because a provision of a judgment that exceeds the jurisdiction of a court is necessarily void and cannot be remedied merely by the lapse of time. Such a judgment is void ab initio and is subject to both direct and collateral attack . . . a court has never acquired jurisdiction over a defendant or the subject matter . . . any judgment ultimately entered is void and is subject to vacation or collateral attack" . . . (Citations omitted; internal quotation marks omitted.) Pinder v. Pinder, 42 Conn. App. 254, 258 (1996).
The Superior Court has the power to articulate and to amend its decision within the subject matter jurisdiction parameters outlined above. This articulation took place and the original Memorandum of Decision of 28 pages was articulated in a Memorandum of Decision of 524 pages including a three page Table of Contents. The only change in the 41 paragraph Order section was one typographical error and the addition of two sentences at the end of paragraph 18. The original paragraph 18 order did not use the word "alimony" and one of the additional sentences used the word "alimony." The issue before this court is what was the character of the dividend equivalent and/or dividend payments in paragraph 18; in the nature of a property distribution or in the nature of an alimony payment. CT Page 6852
"When the decree is silent as to the characterization of an order, an analysis of the structure of the dissolution decree is highly instructive." Passamano v. Passamano, 228 Conn. 85, 91 (1993). "An ambiguous order should be examined in the context of the entire decree." Id. 91. Passamano involved the dispute of whether mortgage and tax payments were property or alimony. The defendant was ordered to pay mortgage installments on the marital residence which in turn was ordered to be sold upon the youngest child attaining the age of 18. The wife had unequivocally waived her claim to periodic alimony. The decree further ordered that the amount of mortgage installments not paid by the defendant was ordered to be deducted from his share of the proceeds from the sale of the property. The order for payments of mortgage installments was contained within the property distribution paragraph. Years later the defendant filed a motion to reopen and modify the judgment, claiming a substantial change in circumstances, and that the children had reached the age of majority. He sought to terminate his obligations to pay mortgage installments even though the marital home had not yet sold. The trial court characterized the mortgage obligation an assignment of martial property. The Appellate Court reversed. The Supreme Court reversed holding that the mortgage payment order constituted an assignment of marital property, not alimony. The Supreme Court concluded that the trial court's intention was that the mortgage payments were part of an assignment of property. It noted the provisions for child support were contained in a separate paragraph. The order to pay the mortgage out of the share of his equity upon the sale of the premises was further indication that it was in the nature of a property distribution order. When constructing a judgment, we may consider the circumstances surrounding its rendition. Garguilo v. Moore, 156 Conn. 357, [156 Conn. 359], 365 (1960).
The court has no power to relabel a property distribution as an award of alimony. Blake v. Blake, 211 Conn. 485, 494 (1989). In Blake it was noted that the judgment file did not affix a label to the $1,200,000 payment. A later dispute arose concerning the nature of the payment. The court conducted an analysis of the structure of the dissolution decree itself. Id. 497. "The difference between an assignment of a specific portion of an estate and alimony is in their purposes . . . The purpose of property assignment is equitably to divide the ownership of the parties' property . . . On the other hand, periodic and lump sum alimony is based primarily upon a continuing duty to support." Blake v. Blake,
supra, 211 Conn. 497-98. The court's latest characterization of the nature of the order should control. Id. 498.
In Viglione v. Viglione, 171 Conn. 213, 217 (1976) the issue was whether the obligation to continue to make mortgage payments was a form CT Page 6853 of periodic alimony as opposed to property. The court held that the mortgage payment was not a form of periodic alimony and was an award of a specific sum of money, the payment of which was to be made in accordance with an existing amortization schedule. "The fact that the defendant was permitted to pay the mortgage according to an existing amortization schedule rather than in a single payment does not have the effect of changing the obligation into periodic alimony." Id. 216. When constructing a judgment, we may consider the circumstances surrounding its rendition. Id. 217.
 CONCLUSION
This court believes that the language in paragraph 18 of the December 3, 1997 order is clear and unambiguous. The court divided the G.E. restricted stock into two components, one property and the other income. The court equitably divided both of those components, awarding the entire property to the defendant and the dividing the income stream equally between the parties.
The second of the last two sentences of the March 31, 1998 articulation did just that; it articulated a decision. Eisenbaum v. Eisenbaum,44 Conn. App. 605, 611 (1997); Holcombe v. Holcombe, 22 Conn. App. 363,366 (1990); Miller v. Miller, 16 Conn. 412, [16 Conn. App. 412], 416 (1988). Practice Book § 66-5. It did not change a property distribution order and convert it into an alimony order. The court does recognize that the first time the phrase "alimony" appears in paragraph 18 is in the first paragraph of its articulation. There is a separate paragraph ordering periodic alimony.
The March 31, 1998 order is an attempt to clarify paragraph 18 to set forth certain circumstances in the event that Mr. Wendt's restricted stock became unrestricted. If he then sold the stock, he would not be able to defeat Mrs. Wendt's right to receive the one half of the dividend equivalent and/or dividends. This is exactly what the original last sentence of the December 3, 1997 order says; it shall be unmodifiable under any circumstances. The court merely outlined two of the circumstances that would apply.
The second additional sentence dealt with another circumstance; a stock split. Assuming a two for one stock split, would the dividends be paid on the 199,000 original shares or the 398,000 post-split shares? This would in effect dilute Mrs. Wendt's share of one-half of the dividend equivalents. It was this court's intention not to dilute that income stream. That is why this court, in its original decision, said that the payments were not to "be modified, terminated or suspended." The two CT Page 6854 additional sentences just clarified that order by giving two examples of how later actions would not defeat the plaintiff's continued right to this income stream for her life. It should be noted that during the pendency of the trial, GE stock in fact did split and the 199,000 shares of restricted stock were, in fact, doubled. The court applied the number of shares at the date of trial, so there would be no diminishing of the stream of income to the plaintiff by reason of stock split and/or sale of the stock by the defendant.
This court devoted six pages of its articulated decision, pages 349 through 354, to a discussion of the GE restricted stock. The nature of the restrictions was discussed. The restricted stock was found to be property subject to distribution at dissolution. The decision also discussed the number of shares in each grant, the date the restrictions would lapse and the fact that the restricted stock paid current dividends as "dividend equivalent". The decision noted that the "dividend equivalent" income in 1995 was $285,360; $358,200 as shown in the defendant's 1996 financial affidavit; and $396,000 as current income. Exhibit 63, tab 14 page 2. The court adopted this last reference as the current income from the dividend equivalent and/or dividends and entered it into paragraph 18 as the income stream portion of the Order. At page 354, this court concludes the Restricted Stock section by stating: "This court will divide this contingent resource among the parties breaking down this resource into its component parts of principal and income. No coverture factor needs to be calculated. The division created thereby will be outlined in the ORDERS section of this decision." This statement further confirms this court's original intention that, as constituted, paragraph 18, awarding one-half of the dividend equivalent and/or dividends to the plaintiff, was an order of income in the nature of alimony not a property distribution.
The court in the last sentence in the December 3, 1997 order stated: "This payment cannot otherwise be modified . . ." The court is well aware that property orders cannot be modified and only payments of periodic income can be modified. This is further confirmation that the court's intention was that this was in the nature of periodic alimony.
In the prior sentence this court stated as follows: "This obligation of the defendant and/or his estate will end on the wife's death." This is a classic language of taxable alimony and is cited as one of the contingencies in the IRS code in order to make periodic payments deductible to the payor and taxable to the payee. 26 U.S.C. § 71. Such a contingency is clearly an indicia of alimony.
The defendant cites Billings v. Billings, 54 Conn. App. 142, 150
(1999), which held that an order of insurance coverage until the CT Page 6855 plaintiff dies, remarries or cohabits was a property distribution, not modifiable alimony. Billings stated, "The language used in the judgment is similar to the language used to convey a determinable fee." Id. 150. The defendant argues that the inclusion in the same paragraph 18 of the decision of the dividend equivalent and/or dividends with the distribution of the 199,000 shares of restricted stock means that the court intended to divide property only. The defendant argues that, the award to the plaintiff was a life estate in one half of any restricted stock dividends actually received. Billings holds that the trial court's characterization of the insurance order as a property distribution was not error. The Appellate Court gave deference to the trial court's characterization of the insurance award as property, not an order in the nature of alimony to secure alimony payments under General Statutes §46b-82. "may direct that security be given therefore on such terms as the court may deem desirable, including an order to either party to contract with a third party for periodic payment or payments contingent on a life to the other party." "Having concluded that the trial court did have the authority to decide that the insurance policy was part of a property settlement, we now determine if it properly did so." Id. 149.
This court divided the restricted stock into two components; property and income, and then divided both. It never intended that the division of the income component to the plaintiff was a property distribution. "In determining the nature of the award, the characterization made by the trial court is controlling." Passamano v. Passamano, supra, 228 Conn. 90;Dubicki v. Dubicki, supra, 186 Conn. 715.
The plaintiff filed a motion prior to judgment pursuant to, then Practice Book § 40-47, seeking post-judgment relief. This court entered a stay of execution in paragraph 40 of the ORDERS section as requested by the plaintiff. "A stay of execution shall issue as to all orders set forth in the decision except as . . . 2) periodic alimony in paragraph 3, 3) periodic payments of `dividend equivalents' in paragraph 18." The phrase "periodic payments" is an indicia of alimony and definitely not an indicia of property. The defendant argues that if the court intended that the "dividend equivalents" be periodic alimony that it should have stated that in sub-paragraph 3. It was this court's intention to reference each sub-paragraph of the stay of execution portion of the ORDER directly to a separate paragraph in the ORDER section using the language of that section. It should be noted that none of the references in this Stay of Execution order deal with multiple paragraphs. Furthermore each numbered sub-paragraph covered a separate subject and no paragraph other than paragraph 18 deals with the G.E. Restricted Stock.
The conditions set forth in the two sentences that were added in the CT Page 6856 March 31, 1998 articulation were prompted by the court's looking at the orders in light of the plaintiff's Motion for Articulation and the history of the stock splits of GE. These two sentences are a mere clarification and articulation and did not change the essential orders of the court. The court did not modify its December 3, 1997 order. It dealt with two possible sets of circumstances, both which could disrupt the stream of income to the plaintiff. The court meant it as a form of clarification. Wolk v. Wolk 191 Conn. 328, 335-36 (1983). "If and when received" was used by this court to protect the defendant in the event that through no action on his behalf the dividends were disrupted, i.e.; GE did not declare a dividend. In that event the defendant would not have to make a payment. The defendant should not be able to, and under the original order could not, prevent the dividends from being paid to the plaintiff by selling the stock.
The operative portion of the order contained in paragraph 18 is the following 2 sentences: "This obligation of the defendant and/or his estate will end on the wife's death. This payment cannot otherwise be modified, terminated or suspended." These two sentences appear both in the December 3, 1997 Memorandum of Decision and in the March 31, 1998 articulated Memorandum of Decision. The two additional sentences in the March 31, 1998 articulation do not change those two operative sentences. Those two operative sentences are classic indicia of periodic alimony and were intended to deal with a stream of income payment not property distribution. The facts are markedly unlike Miller v. Miller, supra,16 Conn. App. 416-17, where the court added a-dividend payment obligation post-decree when the court determined that the $500,000 lump sum transfer paid much less in dividends than the anticipated $50,000 per year.Miller's post-decree "clarification" was held void as converting property into alimony.
Finally the defendant argues that he has not waived this issue by addressing it not on appeal but in the trial court over two years after the original order. The defendant argues subject mater jurisdiction. When a claim implicates subject matter jurisdiction every presumption must be exercised in favor of the jurisdiction of the court. Sachs v. Sachs,22 Conn. App. 410. 415-16 (1990).
 ORDER
The defendant's Motion to Reargue plaintiff's Amended Post Judgment Motion for Contempt having been granted on February 2, 2000 and having been reargued on April 25, 2000 and later briefed, the relief requested therein is DENIED. The court reconfirms its orders rendered from the bench on January 19, 2000: "The defendant is to pay dividends and/or dividend equivalent for 1998 and 1999 to the plaintiff in the sum of CT Page 6857 $151,652. The request for a finding of contempt is denied. The request for attorney's fees is denied. The claim of interest is denied."
SO ORDERED.
KEVIN TIERNEY, J.