[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Introduction
This is an action commenced by the plaintiff husband, with a pro se complaint dated October 30, 2001, seeking a dissolution of marriage on the grounds of irretrievable breakdown. On November 13, 2001, the defendant wife appeared by counsel, who filed an answer and cross complaint. Plaintiff husband's counsel filed an appearance with the court on November 30, 2002.
In addition to the issues presented at the dissolution hearing, there were pendente lite motions which were previously heard by another judge, as follows:
 Motion No. 103 Defendant's Motion for Exclusive Possession and Motion No. 104 Plaintiff's Motion for Exclusive Possession.
 On February 4, 2002, the court entered orders in accordance with the agreement of the parties. Both parties were permitted to reside at the marital residence, 41 Lorraine Drive, Tolland, Connecticut, pendente lite. Each party was ordered to contribute 50% of the enumerated household expenses.
 Motion No. 108 Defendant's Motion for Contempt
 On June 25, 2002, the court entered orders in settlement of the above motion dated June 7, 2002. The parties agreed: plaintiff husband will pay defendant wife $777.00 for June household expenses by June 27, 2002; plaintiff husband will pay defendant wife $860.42 for July household expenses by July 10, 2002.
CT Page 11707
The dissolution trial was held on August 8, 2002. Both parties testified extensively and the court also heard testimony from Daniel Talley, father of the defendant wife.
Applicable Law
Connecticut General Statutes § 46b-81 sets forth the considerations to be used in determining the equitable distribution of marital assets. Those considerations include the length of the marriage, the cause for the dissolution, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The Court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates. "Contribution" includes nonmonetary as well as monetary contributions and includes homemaking and primary caretaking responsibilities. O'Neill v. O'Neill,13 Conn. App. 300, 311-12 (1988).
Similar criteria apply to the determination of an award of alimony pursuant to General Statutes § 46b-82. "`The difference between an assignment of a specific portion of an estate and alimony is in their purposes. Clark, Domestic Relations (1968) § 14.8. The purpose of property assignment is equitably to divide the ownership of the parties' property. . . . On the other hand, periodic and lump sum alimony is based primarily upon a continuing duty to support.' (Citation omitted.) Blakev. Blake, supra, 211 Conn. 497-98." Billings v. Billings,54 Conn. App. 142, 149-150 (1999).
In entering its property orders, the Court shall take into consideration all of the criteria set forth in § 46b-81, but is not required to make express findings on each of the criteria, Weiman v.Weiman, 188 Conn. 232, 234 (1982), nor is it required to give equal weight to each of the specified criteria and no single criteria is preferred over the other. The Court has wide latitude in weighing each criteria under the individual circumstances of each case. Carpenter v.Carpenter, 188 Conn. 736, 740-41 (1982). Collucci v. Collucci,33 Conn. App. 536, 539 (1994). The Court's charge is to distribute, as equitably as possible, the marital assets of the parties. Rubin v.Rubin, 204 Conn. 224, 228 (1987).
Discussion and Findings of Fact
From the testimony and evidence presented and after carefully assessing the credibility of the witnesses, the court finds the following to have CT Page 11708 been proven.
The parties were married on April 23, 1989 in South Windsor, Connecticut. At the time of the marriage the defendant wife's name was S. Joan Talley. There are no minor children issue of the marriage and no minor children have been born to the wife since the date of the marriage. Neither the state of Connecticut nor any town thereof has contributed to the support and maintenance of either party. The plaintiff has resided continuously in this state for more than twelve months immediately prior to the date of the complaint. The court finds that it has jurisdiction over the parties and the marriage.
This is the second marriage for the husband who is 52 years old. He has an adult son from a previous marriage. He has a high school degree and is a leadman machinist for Pratt Whitney where he has worked for twenty-two years and earned $80,700 in 1999, $78,500 in 2000 and $57,600 in 2001. The reduction in income is due to a reduction in overtime hours worked. He has a vested life annuity form of pension with his employer, United Technologies which will pay a benefit of $957 per month at age sixty-five if he was to terminate from the employer April 2002. The growth in this benefit from April 23, 1989 to April 2002 is approximately $570 per month with an actuarial present value of approximately $28,000. He also has an employer savings plan account balance of $65,000 as of August 2002. He has a substantial tool collection, filling several sizeable tool boxes, purchased over his career. He also owns automobiles, valued at approximately $14,000.
The wife is 43 years old and this is her first marriage. She has her high school GED and approximately one year's worth of college credits. Beginning with her first industry job in 1976 at age 17, she rose steadily from a modest position to a management position of responsibility in the health insurance claims processing field. In that last position she earned $45,000. She was laid off in 1994, part of the systemic downsizing by the Travelers due to corporate restructuring. She is currently self-employed as an event manager, earning $25 per hour before expenses. Since the 1995 layoff, she has worked continuously, but never on a full-time basis. She has the capacity to be working full-time, either as a W-2 employee or as a self-employed consultant. Thus, her full-time earning capacity is a salary of $52,000 per year. She has a Citibank (successor to Travelers) employee savings plan account balance of approximately $11,000. She has no pension benefits and no personal property of value. Her car is eighteen years old and of no significant value.
The parties jointly own the marital residence at 41 Lorraine Drive in CT Page 11709 Tolland. While during the course of their marriage the parties partnered in updating the physical structure and maintaining this home, there is a substantial mortgage on the home and minimal equity, approximately $22,000.
After observing both parties at trial, the court finds that throughout the first eight years of the marriage the parties "joined forces" both emotionally and financially to overcome obstacles. For example, both took evening/weekend jobs at a local gas station in order to finance the plaintiff husband's expensive and exhausting court battle regarding custody of his son from his first marriage. The ten year old child had lived full time with the parties in the defendant wife's apartment for nearly a year, both before the parties marriage and thereafter. The defendant was, by all accounts, a fine stepmother and was devastated when the child's primary residence was unilaterally changed by his mother. The child did spend alternate weekends with his father and stepmother. Similarly the plaintiff husband's dying mother lived with the parties in 1992, where she received round-the-clock hospice-type care, predominantly from the defendant, wife. The parties vacationed together. The parties, jointly, spent much of their free time working to improve the structural and aesthetic aspects of their marital home. While the down payment on the home was financed largely by the plaintiff husband's 401(k) plan loan, the stated purpose for the home purchase, at this time, was to allow the plaintiffs son from his first marriage to attend public school outside of Rockville. There was no evidence that during these years the defendant's choice of part-time employment, as an independent consultant, was a significant source of conflict between the parties. To the contrary, by the late 1990s, the parties were on reasonably secure financial footing: the plaintiffs weekly child support obligation had terminated due to the child reaching age eighteen, and the thousands of dollars of legal bills accrued in the custody matter had finally been paid off.
The predominant cause of the breakup of this marriage was the parties divergent expectations of their sexual relationship and, necessarily, whether that relationship would produce children. While there was no evidence of abuse or proof of existence of marital affairs which would more clearly establish fault it would seem that the plaintiffs nondisclosure to the defendant as to his preference for nontraditional and ultimately, internet based, sexual satisfaction directly resulted in the failure of this marriage. Put simply, the defendant wife expected that a traditional recurring sexual relationship would produce issue of the marriage and she communicated this hope to her husband early on in their courtship. The plaintiff husband had no expectation of or desire to father additional children and chose not to disclose this foundational CT Page 11710 marital disagreement to his wife.
 ORDERS
1. Dissolution: The Court finds the marriage has broken down irretrievably. Judgment shall enter dissolving the marriage on said grounds.
2. Alimony: The defendant seeks periodic alimony. Based on a comparison of the current available net income of the parties, the court orders the plaintiff to pay periodic alimony to the defendant in the amount of $150 per week for the short-term period of thirty months. The alimony is nonmodifiable as to term and amount except the alimony shall earlier terminate upon the death of either party or the marriage of the plaintiff. The alimony award is intended to reflect the moderate length of the marriage, thirteen years, and to give the plaintiff sufficient time to make reasonable and appropriate efforts to reach her full time earnings potential.
3. Health Insurance: The defendant wife shall have the right to elect COBRA coverage on plaintiff husband's health insurance. Defendant wife shall pay the premium for her coverage.
4. Marital Residence: The plaintiff shall sell the marital home located at 41 Lorraine Drive, Tolland, Connecticut. The proceeds from the sale are to be used first to pay of all mortgages on the property and any costs associated with the sale. The net proceeds from the sale are to be split 50/50 between the parties.
5. Liabilities: Each party will pay the debts shown on his or her respective financial affidavits. Plaintiff shall pay Defendant the sum of $3000 for his share of joint marital debt which she is assuming.
6. Personal Property: Each party will keep the personal property in his or her possession.
7. Bank Accounts: The parties shall retain their own bank accounts and any joint accounts shall be closed and equally divided, as listed on their respective financial affidavits.
8. Automobiles: The defendant shall retain the 1995 Dodge Truck and 1984 Pontiac Fiero free and clear of any claim of the plaintiff. The plaintiff shall retain the 1988 Oldsmobile Calais; 1954 Chevrolet Belair and trailer free and clear of any claim of the defendant. Each CT Page 11711 party shall sign whatever documents are necessary to effectuate the transfer of said vehicles.
9. Retirement Funds: By way of a QDRO, the plaintiff is to transfer the sum of $30,000 from his 401(k) plan to the defendant's 401(k) plan in order to reflect a portion of the significant growth in the plaintiffs total retirement savings over the term of the marriage. The plaintiff shall retain his UTC pension free and clear of any claim of the defendant. The transfer of the plaintiff's 401(k) balance, ordered herein, takes into account the marital share of this pension plan. The defendant shall retain her 401(k) plan free and clear of any claim by the plaintiff.
10. Pendente Lite Orders: Plaintiff will pay the amounts ordered to be paid under the pendente lite orders entered by the court on February 4, 2002, up to and including the month of September 2002, to the defendant no later than October 31, 2002. After this month of September 2002, the plaintiff shall have no further obligation to contribute to the household expenses.
11. Attorney's Fees: The plaintiff is ordered to pay the defendant's attorney the sum of $2500 in attorney's fees within ten business days of the closing on the sale of the marital home. Otherwise, the parties shall be responsible for their own attorney's fees.
12. Name Restoration: The defendant wife's previous name of Talley is restored.
Alvord, J. CT Page 11712