[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION #142 — MOTION FOR CONTEMPT
On July 22, 2002, the plaintiff in the instant action filed the instant Motion for Contempt. The motion provides in pertinent part that the Court ordered the defendant to:
 1. Maintain household bills until mortgage on house was paid half down. 2. Divide pensions, 401k and deferred compensation accounts 50/50 and pay the cost of the QUDROS (sic).
 The plaintiff alleges that the defendant has disobeyed the court orders in that he:
 Refused to pay utility and household insurance bills up until the time he paid off half of the mortgage. 2. Refuses to cooperate and pay the attorney which is handling the QUDRO (sic).
Before the hearing of this matter began the parties informed the Court that they had reached an accord on some of the issues that were going to be presented to the Court and they had in fact entered into a written stipulation concerning said issues. The parties were canvassed about said agreement and the Court subsequently accepted it. The agreement provides in pertinent part that:
 B. The Defendant shall immediately execute the existing QUADRO (sic) and turn over the executed document over to the Plaintiff. The Defendant shall provided (sic) releases or other authorization to the Plaintiff to confirm that the QUADRO (sic) balance accurately reflects all accrued retirement funds of the Defendant.
CT Page 324 Whereas the parties were able to reach a settlement concerning the QUADRO (sic), issue evidence concerning said issue was not introduced during the hearing so the Court will not consider this issue.
As to the remaining issue concerning the payment of half of the outstanding mortgage and all of the household bills until such payment was made. The Separation Agreement in this matter provides in pertinent part that:
4. REAL ESTATE AND DIVISION OF PERSONAL PROPERTY
(a) HOUSEHOLD ITEMS:
 The parties will divide between them, to their mutual satisfaction, the personal effects, household furniture and furnishings and other articles of personal property, which have heretofore been used by them in common. The Parties, if they cannot agree, shall submit this issue to Family Relations for mediation though the Court shall retain continuing jurisdiction over said issue.
 (b) The Husband shall quitclaim the house to the wife today. The Husband shall waive all claims to the property. Within 60 days of today (on or before May 12, 2002 at 5:00 p.m.), the Husband shall provide the wife with a certified check made payable to the mortgage lender of the parties mortgage, in the amount of $74,261.60. Any arrearage on the mortgage as of the date this payment is made shall be added to this amount, as well as any penalty or interest accrued as a result of the Husband's failure to have the mortgage current. These funds constitute property division between the parties. For every day that the Husband is late with this payment, the sum of $50 shall be added on as well as any penalty or interests associated with late mortgage payments. Until the payment is made to the Wife in accordance with this provision, the Husband shall continue to pay all of the bills for the house (mortgage, taxes, insurance and all utilities), as set forth on the wife's financial affidavit.
The movant in this matter asserts that the defendant violated the Court order by not paying the household bills until the agreed upon mortgage payment was paid. CT Page 325
 In a civil contempt proceeding, the movant has the burden of establishing, by a preponderance of the evidence, the existence of a court order and noncompliance with that order. See Potter v. Board of Selectmen, 174 Conn. 195, 197, 384 A.2d 369 (1978); Duve v. Duve, 25 Conn. App. 262, 269, 594 A.2d 473, cert. denied, 220 Conn. 911, 597 A.2d 332 (1991), cert. denied, 502 U.S. 1114, 112 S.Ct. 1224, 117 L.Ed.2d 460 (1992).
 Statewide Grievance Committee v. Zadora,62 Conn. App. 828,832 (2001).
 "[A] finding of indirect civil contempt must be established by sufficient proof that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure as in ordinary cases. . . . Billings v. Billings, 54 Conn. App. 142, 152, 732 A.2d 814 (1999).
 Legnos v. Legnos, 70 Conn. App. 349, 352 (2002).
 In the present action the plaintiff has established the existence of a court order.
As to the issue of noncompliance, during the hearing evidence was introduced by the plaintiff concerning a payment made by the defendant to the mortgagee in the amount of seventy two thousand twenty four dollars and ninety one cents ($72,024.91). The evidence indicates that the payment was processed on April 8, 2002.
The plaintiff asserts that the aforementioned payment is two thousand one hundred sixty six dollars and sixty-nine cents ($2,166.69) less then the seventy four thousand two hundred and sixty one dollars and sixty cents ($74,261.69) cited in the Separation Agreement.
During direct examination the defendant testified that on or about April 1, 2002, he had indeed made a payment by wire transfer in the amount of seventy two thousand twenty four dollars and ninety one cents ($72,024.91) to Liberty Bank. He further testified that at the time that the payment was made the aforementioned amount represented half of the outstanding mortgage principal balance. The defendant asserts that the purpose of the payment was to pay half of the party's outstanding mortgage obligation. CT Page 326
As of April 1, 2002, the principal balance on the subject mortgage was one hundred forty seven thousand seven hundred seventy one dollars and ten cents ($147,771.10).
Shortly after making said payment the defendant contract his lawyer concerning the amount that he had tendered to the mortgagee. After having said discussion the defendant asserts that he made another payment by wire transfer in the amount of two thousand forty dollars and ninety-six cents ($2,040.96). In support of his assertions the defendant provided evidence in the form of a history statement from Liberty Bank. The statement purports to show the history of loan number 630061921 on the date of April 19, 2002. Said statement provides in pertinent part that payments were made on the following dates, in the following amounts:
04/02/02 $ 680.32 04/08/02 $ 680.32 04/08/02 $27,024.91 04/19/02 $ 680.32
The total of the aforementioned payments is seventy four thousand sixty five dollars and ninety-six cents ($74,065.87).
The court finds that the better and weightier evidence in this case is that between the days of April 2, 2002, and April 19, 2002, the subject mortgage account was credited in the amount of seventy four thousand sixty five dollars and ninety-six cents and that the source of said credit was funds that were wire transferred to the mortgagee by the defendant Curtis Fields.
Although the defendant testifies that the purpose of the aforementioned payment was to pay half of the outstanding mortgage obligation, the language of the Separation Agreement provides for a specific amount of seventy four thousand two hundred and sixty one dollars and sixty cents ($74,261.69). Said amount to be paid on or before May 12, 2002 at 5:00 p.m. Whereas the amount actually paid by the defendant by his own testimony was seventy four thousand sixty five dollars and eighty-seven cents ($74,065.87) there was a short fall of one hundred ninety five dollars and eighty two cents ($195.82). Although this shortage exists the court finds that it was not due to a wilfully contemptuous act on the behalf of the defendant. The more credible evidence indicates that the defendant made good faith efforts to comply with the orders of the Court on this issue.
 In order to constitute contempt, a party's conduct CT Page 327 must be wilful. Connolly v. Connolly, 191 Conn. 468, 483, 464 A.2d 837 (1983). "The contempt remedy is particularly harsh . . . and may be founded solely upon some clear and express direction of the court. . . . One cannot be placed in contempt for failure to read the court's mind." (Citations omitted; internal quotation marks omitted.) Blaydes v. Blaydes, 187 Conn. 464, 467, 446 A.2d 825 (1982). A good faith dispute or legitimate misunderstanding of the terms of an alimony or support obligation may prevent a finding that the payor's nonpayment was wilful. This does not mean, however, that such a dispute or misunderstanding will preclude a finding of wilfulness as a predicate to a judgment of contempt. Whether it will preclude such a finding is ultimately within the trial court's discretion. "It is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." Marcil v. Marcil, 4 Conn. App. 403, 405, 494 A.2d 620 (1985).
 Eldridge v. Eldridge, 244 Conn. 523, 529 (1998).
As to the issue concerning the payment of the household bills until the payment of the seventy four thousand two hundred and sixty one dollars and sixty cents ($74,261.69), the plaintiff introduced evidence of a Septic System Service Bill, dated March 3, 2002 and in the amount of one hundred forty five dollars ($145.00). A water company bill dated January 22, 2002 in the amount of forty eight dollars and fifty-five cents ($48.55).[1]
An additional Connecticut Water Bill with a billing date of March 25, 2002 for an additional one fifty-eight dollars and twenty eight cents ($58.28).[2] A fuel bill for March 20, 2002 in the amount of one hundred fifty one dollars and thirty-one cents ($151.31)[3]
Although the Court finds that the defendant's actions concerning the payment of the subject portion of the mortgage was not wilfully contemptuous, the spirit of the Agreement has not quite been met. The Court is therefore of the position that a remedy must be fashioned in order to protect the integrity of the judgment.
 "[I]t is [however,] within the equitable powers of the trial court to fashion whatever orders [are] required to protect the integrity of [its original] judgment." (Internal quotation marks omitted.) Clement v. Clement, 34 Conn. App. 641, 646, 643 A.2d 874 (1994). CT Page 328
 Santoro v. Santoro, 70 Conn. App. 212, 217 (2002).
The Court orders the defendant to pay the difference of the amount tendered and the agreement ($195.82); The portion of the Connecticut Water bill for the dates of December 14, 2001 to March 21, 2002 ($48.55); The Wilcox fuel bill for March 20, 2001 ($151.31)[4] The Bill Walter Sons Septic Service bill ($145.00).
The plaintiffs motion for contempt is denied. The defendant shall however pay to the plaintiff the total of five hundred forty dollars and sixty-eight cents ($540.68) pursuant to the above. So ordered.
 ___________________ Richard Allan Robinson, J January 9, 2003