THERESA B. BLAKE *v.* BENSON P. BLAKE
(13596)

PETERS, C. J., SHEA, CALLAHAN, GLASS and HULL, Js.

Argued March 2—decision released June 20, 1989

*Wesley W. Horton,* with whom were *Susan M. Cormier* and, on the brief, *Jeffrey A. Hoberman,* legal intern, for the appellant (defendant).

*Arnold H. Klau,* for the appellee (plaintiff).

HULL, J. The defendant appeals from postdissolution orders of the court awarding the plaintiff $10,000 attorney's fees for the defense of the defendant's earlier appeal to this court, *Blake* v. *Blake,* 207 Conn. 217, 541 A.2d 1201 (1988), and interest on a delayed payment by the defendant of a portion of a $1,200,000 payment to the plaintiff ordered in the underlying dissolution judgment. The defendant framed the issues as follows:

"1. Did the Court abuse its discretion in awarding counsel fees to the Plaintiff to defend the appeal when she admitted having liquid assets of about $630,000 and a net worth of about $1,535,000 at the time of the hearing?

"2. As a matter of law, was there an accord and satisfaction when the Plaintiff cashed the Defendant's check for $525,000 marked 'final payment'?

"3. Did the Court improperly invoke the adverse inference rule against the Defendant concerning the accord and satisfaction issue?

"4. Did the Court in September 1988 have the power over the Defendant's objection to state that the judgment in July 1987 for lump sum alimony was really a division of property award?

"5. If not, does [General Statutes] § 52-350f provide for interest on lump sum alimony?"

We find error in the award of attorney's fees and no error in the award of interest on the delayed payment of part of the financial order.

On May 19, 1988, after we affirmed the trial court's decision in *Blake* v. *Blake,* supra, the court awarded to the plaintiff attorney's fees of $10,000 plus expenses of $4974.63. The plaintiff had requested an award of attorney's fees and costs in the amount of $25,297.13. At the hearing on attorney's fees the parties submit-

ted current financial affidavits. The plaintiff's affidavit showed a net worth of about $1,535,000. The parties stipulated that her liquid assets were approximately $630,000. The defendant's net assets on his affidavit were $5,503,000. The defendant has not attacked the reasonableness of the requested fees.

The defendant did, however, object to any award of attorney's fees, on the ground that the plaintiff had ample liquid funds to pay her own fees. The court responded to this objection by stating that if it had known that the defendant was going to appeal its decision in the dissolution case it would have made different orders originally. The court also stated "that part of the appeal was a pressure technique by Mr. Blake, particularly," and "frivolous." We found nothing frivolous in the appeal to this court. Punishment of a litigant should play no role in the determination of the issue of awarding attorney's fees.

The starting point of our analysis is *Koizim* v. *Koizim,* 181 Conn. 492, 435 A.2d 1030 (1980). In *Koizim,* the defendant wife was awarded $60,000 per year lump sum alimony for a period of ten years, periodic alimony of $4000 per month and an allowance for counsel fees in the approximate amount of $55,000. Id., 494. We said: "The plaintiff quite properly challenges the trial court's award of counsel fees and expenses. Counsel fees are not to be awarded merely because the obligor has demonstrated an ability to pay. 'Courts ordinarily award counsel fees in divorce cases so that a party (usually the wife) may not be deprived of her rights because of lack of funds. *Krasnow* v. *Krasnow,* 140 Conn. 254, 265, 99 A.2d 104 (1953); *Steinmann* v. *Steinmann,* 121 Conn. 498, 504, 186 A. 501 (1936).' *Ridolfi* v. *Ridolfi,* 178 Conn. 377, 380, 423 A.2d 85 (1979). In making its determination regarding attorney's fees the court is directed by General Statutes § 46b-62 to consider the respective financial abilities of the parties.

*Murphy* v. *Murphy,* 180 Conn. 376, 380, 429 A.2d 897 (1980). Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. Because the defendant has ample liquid funds as a result of the other orders in this case, there was no justification for an allowance of counsel fees." *Koizim* v. *Koizim,* supra, 500–501.

In *Fitzgerald* v. *Fitzgerald,* 190 Conn. 26, 29–30, 459 A.2d 498 (1983), we relied on *Koizim* in upholding the trial court's denial of attorney's fees. The plaintiff in *Fitzgerald* claimed that the court had abused its discretion in denying attorney's fees. We noted that the availability of "sufficient cash" to pay one's attorney's fees is not an absolute litmus test for making an award pursuant to General Statutes § 46b-62. Id., 33. "This is because a trial court's discretion should be guided so that its decision regarding attorney's fees does not undermine its purpose in making any other financial award." Id., 34. " 'Whether a spouse has "ample liquid funds" with which to pay counsel fees . . . can only be determined by examining the total financial resources of the parties in light of the statutory criteria.' " (Citation omitted.) Id., quoting *Venuti* v. *Venuti,* 185 Conn. 156, 163, 446 A.2d 878 (1981).

In the light of the plaintiff's net assets of over $1,500,000 and her liquid assets of $630,000, it cannot reasonably be claimed that the failure to award $14,947.63 for attorney's fees and expenses would undermine or skew the substantial financial awards granted to her in the dissolution judgment. To award counsel fees under these circumstances is gilding the lily. The court abused its discretion in making such an order.

The defendant's issues two through five are all facets of his claim that the trial court erred in awarding the plaintiff interest on the delayed payment of part of an

award of $1,200,000 to her in the dissolution decree. The background of these claims is as follows: In its oral memorandum of decision in the *Blake* dissolution case on July 27, 1987, the court stated: "I'm going to order the sum—that he pay her the sum of $1,200,000 as a payment in lump-sum alimony." The judgment file did not label the $1,200,000 payment in any way. It merely stated: "5. The defendant shall pay the plaintiff $1,200,000." During the pendency of the *Blake* appeal, the plaintiff moved to terminate the stay of execution on the $1,200,000 order. At the hearing on this motion the court purported to clarify its order by calling it a property division. The court terminated the stay on $675,000 of the award. On May 13, 1988, after the original appeal had been resolved against the defendant, the defendant's counsel hand-delivered a check for $525,000—the balance of the $1,200,000 order—to the plaintiff's attorney's office. The check contained on the left-lower front thereof the notation "final payment." It was accompanied by a letter from the defendant's counsel to the plaintiff's counsel in which the first sentence stated: "Enclosed is a check for $525,000 as the final payment of the lump sum alimony award."

The plaintiff raised the issue of interest on the payment of $525,000 at the hearing on the plaintiff's motion for attorney's fees on May 19, 1988, followed up by a written motion dated May 20, 1988. At the hearing on the plaintiff's motion for attorney's fees, the defendant objected to the award of interest on the ground, among others, that the judge had characterized the $1,200,000 order as lump sum alimony when he orally rendered his decision. The trial court noted that no motion to articulate the oral decision on the dissolution had been filed. The court ruled as follows: (1) when the decision is read as a whole it is clear that

the court considered it as a division of property; (2) under *Niles* v. *Niles,* 15 Conn. App. 718, 546 A.2d 329 (1988), interest is authorized; (3) the phrase "final payment" is ambiguous and, since the defendant did not testify "the court is entitled to draw some inference"; and (4) the defendant did not prove the defense of accord and satisfaction. The court then awarded interest to the plaintiff in the amount, as later corrected, of $59,095.91.

The defendant's second claim of error is that, as a matter of law, there was an accord and satisfaction when the plaintiff cashed the defendant's check for $525,000 marked "final payment." "When there is a good faith dispute about the existence of a debt or about the amount that is owed, the common law authorizes the debtor and the creditor to negotiate a contract of accord to settle the outstanding claim. Such a contract is often initiated by the debtor, who offers an accord by tendering a check as 'payment in full' or 'in full satisfaction.' If the creditor knowingly cashes such a check, or otherwise exercises full dominion over it, the creditor is deemed to have assented to the offer of accord. Upon acceptance of the offer of accord, the creditor's receipt of the promised payment discharges the underlying debt and bars any further claim relating thereto, if the contract of accord is supported by consideration. *Kelly* v. *Kowalsky,* 186 Conn. 618, 621, 442 A.2d 1355 (1982); *W. H. McCune, Inc.* v. *Revzon,* 151 Conn. 107, 109, 193 A.2d 601 (1963); *Bull* v. *Bull,* 43 Conn. 455, 462 (1876); 2 Restatement (Second), Contracts (1981) § 281; E. Farnsworth, Contracts (1982) § 4.23, p. 282.

"A contract of accord and satisfaction is sufficiently supported by consideration if it settles a monetary claim that is unliquidated in amount." *County Fire Door Corporation* v. *C. F. Wooding Co.,* 202 Conn. 277, 281–82, 520 A.2d 1028 (1987).

As the trial court found, the defendant's claim founders on the lack of a factual foundation for an accord and satisfaction. It is very clear that there was no good faith dispute about the existence of the debt or the amount owed. The defendant claims that there was an issue in the case concerning the balance of the $1,200,000 payment in that the court had earlier, in a colloquy between court and counsel, left open the possibility that some or all of the $1,200,000 payment might be in the form of bonds. The defendant argues that this possibility was eliminated by the plaintiff's acceptance of the $525,000 check, thus bestowing a benefit on the plaintiff to which she was not entitled. This claim represents a mere shadow of a claimed dispute sufficient to support an accord and satisfaction. The defendant points to no evidence in the record that he ever sought permission from the court to substitute bonds for the cash payment ordered by the court or even that he had any interest in pursuing such a goal. The question of interest on the $525,000 payment had never been disputed by the parties, up to the date of payment, but was only raised later by the plaintiff in a separate court proceeding. Further, consideration for a contract of accord and satisfaction was lacking since the $525,000 payment was not unliquidated in amount but was instead the precise amount payable under a judgment of the court enforceable by contempt proceedings. The court did not err in concluding that the defendant had not proved an accord and satisfaction.

The defendant next claims that he is entitled to a new trial because the court improperly relied on *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 165 A.2d 598 (1960), and its progeny to draw an adverse inference from his failure to testify. The court stated that it was "entitled to draw some inference where the actual party to the litigation could have been here to testify as to what he intended." The rule concerning inferences to

be drawn from the failure of an available witness to testify is too well known in Connecticut trial and appellate proceedings to justify lengthy discussion of this claim.

" 'The failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause.' *Ezzo* v. *Geremiah,* 107 Conn. 670, 677, 142 A. 461 (1928). 'There are two requirements for the operation of the rule: The witness must be available, and he must be a witness whom the party would naturally produce.' *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598 (1960); see *D'Amico* v. *Manson,* 193 Conn. 144, 153, 476 A.2d 543 (1984); *Doran* v. *Wolk,* 170 Conn. 226, 230, 365 A.2d 1190 (1976). 'To have the jury charged on the rule, the party claiming the benefit of it must show that he is entitled to it. *State* v. *Carrione,* 188 Conn. 681, 688, 453 A.2d 1137 (1982), cert. denied, 460 U.S. 1084, 103 S. Ct. 1775, 76 L. Ed. 2d 347 (1983).' *State* v. *Amarillo,* [198 Conn. 285, 307, 503 A.2d 146 (1986)]." *State* v. *Hart,* 198 Conn. 424, 426, 503 A.2d 588 (1986). The *Secondino* rule is applicable to court trials. *D'Amico* v. *Manson,* supra; *Friedman* v. *Friedman,* 180 Conn. 132, 135, 429 A.2d 823 (1980); *Olin Corporation* v. *Castells,* 180 Conn. 49, 53, 428 A.2d 319 (1980). The absence of the defendant as a witness met the second prong of the *Secondino* test in that he was a witness whom the party would naturally have produced. The rule, however, was inapplicable "for the reason that there is nothing in the record to indicate the 'availability' of the 'missing' witness, an essential prerequisite." *D'Amico* v. *Manson,* supra, 153. The defendant has not shown that the court's error in voicing a vague form of such an inference was prejudicial to him. The court's conclusion that there was no accord and satisfaction

proved by the defendant rests on such a solid factual and legal foundation concerning the absence of a dispute between the parties and the lack of consideration, that we would be compelled to conclude as a matter of law that the defendant did not sustain his burden of proof on that issue regardless of whether the trial court may have drawn an adverse inference from the failure of the defendant to testify.

The defendant's next claim is that the order for payment of $1,200,000 was lump sum alimony and therefore no interest is allowable on the delayed payment of $525,000. He bases this argument on the court's statement to that effect during its oral memorandum of decision in the dissolution action ordering the defendant to pay $1,200,000 "in lump sum alimony." He claims that the court's two attempts to relabel this order as a division of property were illegal attempts to change an order under the guise of clarifying or articulating it. We recently summed up the law on this subject in *State* v. *Wilson,* 199 Conn. 417, 436–37, 513 A.2d 620 (1986), as follows: "Practice Book § 3082 explicitly preserves our common law rule that a trial court possesses the inherent power to modify its own judgments during the term at which they were rendered. *Steve Viglione Sheet Metal Co.* v. *Sakonchick,* 190 Conn. 707, 710, 462 A.2d 1037 (1983); *Tyler* v. *Aspinwall,* 73 Conn. 493, 497, 47 A. 755 (1901). 'During the continuance of a term of court the judge holding it has, in a sense, absolute control over judgments rendered; that is, he can declare and subsequently modify or annul them.' *Sturdevant* v. *Stanton,* 47 Conn. 579, 580 (1880). Under the common law rule, a distinction is drawn between 'matters of substance' and 'clerical errors'; the distinction being that mere clerical errors may be corrected at any time even after the end of the term. *Morici* v. *Jarvie,* 137 Conn. 97, 104, 75 A.2d 47 (1950); *Brown* v. *Clark,* 81 Conn. 562, 566–67, 71 A. 727 (1909);

*Wilkie* v. *Hall,* 15 Conn. 32, 37 (1842). But '[i]n the absence of waiver or consent of the parties, a court is without jurisdiction to modify or correct a judgment in other than clerical respects after the expiration of the term of the court in which it was rendered.' *Snow* v. *Calise,* 174 Conn. 567, 571, 392 A.2d 440 (1978)." We further concluded, in reliance on the provision in Practice Book § 326 that any civil judgment may be opened or set aside "within four months succeeding the date on which it was rendered or passed," that for purposes of the common law rule, a criminal judgment also may not be modified in matters of substance beyond a period of four months after the judgment has become final. *State* v. *Wilson,* supra, 437. We note that the judgment file, as previously discussed, did not affix any label to the $1,200,000 payment. And we further note that the purported clarifications of the judgment contained in the oral decision in the case occurred long after the four month period after the judgment had expired.

Whether the court's changed characterization of its judgment granting "lump sum alimony" is a "matter of substance" requires a brief look at the precedent cited by the court in *State* v. *Wilson,* supra. *Wilkie* v. *Hall,* supra, 38, concerned the amendment by a former deputy sheriff of a return on a writ of execution nearly five years after the original was filed. In *Brown* v. *Clark,* supra, we held that a mistake in failing to include interest for a certain period in the judgment actually rendered was not a judicial error but a clerical mistake in not making the language of the judgment file conform to the decision actually announced by the memorandum, and was therefore correctable even at a later term. In *Morici* v. *Jarvie,* supra, 105, a motion to "amplify" an earlier judgment file was made after the expiration of the term in which the judgment was rendered. We held that the purported change in the origi-

nal judgment file, which merely adjudicated the amount of the debt due from the defendant to the plaintiff, to a complete foreclosure judgment, was a matter of substance which could not be corrected after the term, in the absence of waiver. Id., 104.

It can readily be seen that the three cases cited do not clearly illuminate our task. *Wilkie* v. *Hall,* supra, did not concern the same issues; *Brown* v. *Clark,* supra, was quite evidently a clerical error involving a variance between the judgment as announced and that contained in the judgment files; and *Morici* v. *Jarvie,* supra, went to the other extreme where the court attempted to transform an order finding only the debt due into a foreclosure judgment in complete detail, thus involving an out-of-term attempt to correct a judicial error. The case of *Goldreyer* v. *Cronan,* 76 Conn. 113, 55 A. 594 (1903), is somewhat closer to the mark. In *Goldreyer,* the trial court filed a memorandum awarding the plaintiff $300 and a corresponding judgment file was entered. Id., 114. Over one year later the court "corrected" the judgment, on motion of the plaintiff, by adding interest in the amount of $100.50. We concluded that the later adding of interest was an attempt to correct a judicial error beyond the term of court involved and that the court thirteen months later had no power to correct, amend or change the original judgment. Id., 118.

Although it may appear to be a close issue under traditional analysis, we conclude that the change in nomenclature of the $1,200,000 order under the circumstances of this case was not a "matter of substance" that was beyond the power of the court to correct beyond the term in which it was rendered. Three reasons support this conclusion.

First and foremost, the one-time use of the term "lump sum alimony" in the oral memorandum of decision can be viewed as merely a matter of a label affixed

to an order, despite the admittedly serious ramifications that may result from the distinction between a lump sum alimony award and a division of property. Next, the status of the financial order was not an issue in the dissolution case. Further, an analysis of the structure of the dissolution order is highly instructive. We stated in *Dubicki* v. *Dubicki*, 186 Conn. 709, 713–15, 443 A.2d 1268 (1982), that "[t]he requisite factors for the trial court's determination of marital property division depend upon whether it is considered as lump sum alimony pursuant to General Statutes § 46b-82, or as a property assignment pursuant to General Statutes § 46b-81. Under the provisions of both statutes the trial court ' "shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate" and needs of each of the parties. General Statutes §§ 46b-81 (c), 46b-82.' *McPhee* v. *McPhee,* [186 Conn. 167, 171, 440 A.2d 274 (1982)]. In assigning marital property, however, 'the trial court must also consider the liabilities of the parties, "the opportunity of each for future acquisition of capital assets and income . . . [and] the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." General Statutes § 46b-81 (c).' *McPhee* v. *McPhee,* supra, 171; see, e.g., *Pasquariello* v. *Pasquariello,* 168 Conn. 579, 583, 362 A.2d 835 (1975)." We further stated that "[w]e have often distinguished between the assignment of property under § 46b-81 and alimony under § 46b-82; see, e.g., *Beede* v. *Beede,* 186 Conn. 191, 192, 440 A.2d 283 (1982); *McPhee* v. *McPhee,* [supra, 168]; *Basile* v. *Basile,* 185 Conn. 141, 142–43, 440 A.2d 876 (1981); *Gallo* v. *Gallo,* 184 Conn. 36, 49–50, 440 A.2d 782 (1981). The difference between an assignment of a specific portion of an estate and alimony is in their purposes. Clark, Domes-

tic Relations (1968) § 14.8. The purpose of property assignment is equitably to divide the ownership of the parties' property. *McPhee* v. *McPhee,* supra, 170. On the other hand, periodic and lump sum alimony is based primarily upon a continuing duty to support. *Hotkowski* v. *Hotkowski,* 165 Conn. 167, 170, 328 A.2d 674 (1973); see *Smith* v. *Smith,* 185 Conn. 491, 493, 441 A.2d 140 (1981); *Wood* v. *Wood,* [165 Conn. 777, 784, 345 A.2d 5 (1974)]; 2 Nelson, Divorce and Annulment (2d Ed.) § 14.06." *Dubicki* v. *Dubicki,* supra, 714 n.2. Finally, the precise issue we are considering was delineated in *Dubicki* as follows: "In its memorandum of decision, the trial court characterized the transfers of the plaintiff's property interest to the defendant as lump sum alimony. In its rectification of the record, however, the trial court characterized the transfers as property distribution. *The characterization which is later in time should control, and is more consistent with the trial court's actions, and with the parties' testimony.*" (Emphasis added.) Id., 715.

In light of the *Dubicki* criteria, the $1,200,000 order was a property assignment. This order was part of an equitable division of the ownership of the parties' property. The court ordered the plaintiff to convey her interest in the family home in Avon to the defendant and the defendant to convey his interest in a lot in California to the plaintiff. *Blake* v. *Blake,* supra, 219. The continuing duty to support, on which a lump sum alimony award could have been based, was satisfied by the court's award of $50,000 per year periodic alimony and $600 per week child support. The court's later characterization of the award is "more consistent with the trial court's actions." *Dubicki* v. *Dubicki,* supra. Any doubt that may remain is dispelled by our frequent reference in *Blake* v. *Blake,* supra, to the order of $1,200,000 payment as a "division of property."[1]

---

[1] "The *defendant* contends that the trial court abused its discretion to assign property of either spouse to the other under [General Statutes]

We conclude, therefore, that the order of payment of $1,200,000 by the defendant to the plaintiff was a division of property and not lump sum alimony. The significance of this conclusion lies in the defendant's claim that interest cannot be awarded on lump sum alimony under General Statutes § 52-350f. His claim is as follows: General Statutes § 52-350f allows interest on a money judgment. General Statutes § 52-350a (13) defines a money judgment so as to exclude a "family support judgment." Lastly, General Statutes § 52-350a (7) defines a "family support judgment" as referring to a "payment of a legal obligation for support or alimony to a spouse, former spouse, or a child and includes any such order for periodic payments whether issued pendente lite or otherwise." In view of our conclusion that the $1,200,000 payment was a division of property, we leave this issue for another day.

The precise issue of the award of interest on a "property settlement" was considered by the Appellate Court in *Niles* v. *Niles,* supra. The husband became entitled to his share of the proceeds of the parties' marital home in accordance with the dissolution judgment. The wife had delayed payment to him and paid only in response to a motion to compel her to do so. The defendant then sought postjudgment interest on the delayed payment which the trial court awarded. In upholding the court's judgment, the Appellate Court stated: "The plaintiff next claims that the trial court erred in holding that interest may be awarded on the marital home sale proceeds which the plaintiff contends derived from a 'family judgment.' We assume that the plaintiff, by the use of that term, intends to refer to 'family support judgments.' For purposes of postjudgment procedures, that term is defined in General Statutes § 52-350a (7)

§ 46b-81 by awarding the plaintiff $1,200,000, as well as a lot in California, which had an undisputed value of $375,000." (Emphasis added.) *Blake* v. *Blake,* 207 Conn. 217, 229, 541 A.2d 1201 (1988).

as 'a judgment, order or decree of the superior court for payment of a legal obligation for support or alimony to a spouse, former spouse or child and includes any such order for periodic payments whether issued pendente lite or otherwise.' There is no statutory definition of the term 'family judgment' used by the plaintiff.

"The defendant, on the other hand, argues that the judgment in question was not a family support judgment, but rather constituted a 'money judgment,' as defined in the pertinent part of § 52-350a (13) as 'a judgment, order or decree of the court calling in whole or in part for the payment of a sum of money, other than a family support judgment.' We agree with the defendant.

"It is apparent that an order for the payment of money from the sale of real estate constitutes a 'money judgment' and not a 'family support judgment,' as those terms are defined, despite the judgment's origin in an action on the family docket. One party cannot, at its whim, deprive another of monies due and owing simply by changing the characterization of the obligation owed. While similarities exist between support payments and property settlements, we recognize that each serves a distinct purpose. Support, which is generally modifiable, often serves to satisfy an ongoing obligation, whereas a property settlement constitutes a final resolution of a dispute, and as such, warrants the penalty of interest when satisfaction is not obtained. We therefore conclude that the trial court properly ordered that postjudgment interest be paid." Id., 720.

We concur in the reasoning and decision of the Appellate Court. The trial court did not err in the award of postjudgment interest on the defendant's payment of $525,000 to the plaintiff.

There is error in the award of attorney's fees to the plaintiff, that portion of the judgment is set aside and

the case is remanded with direction to render judgment denying the motion for attorney's fees; there is no error in the award of interest on the payment of $525,000 to the plaintiff.

In this opinion the other justices concurred.