[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action commenced by the plaintiff husband on September 26, 2000 seeking a dissolution of marriage on the grounds of irretrievable breakdown. He also claims an equitable division of the marital assets. On October 2, 2000 the defendant wife appeared by counsel. On April 23, 2001 the defendant filed an answer and two count cross-complaint in which she claims a dissolution of marriage on the grounds of irretrievable breakdown and intolerable cruelty. She also claims alimony, counsel fees, an order vesting the husband's interest in 81 Steeplechase Drive, Manchester, Connecticut, in her, and an equitable division of the assets of the parties. Trial was held on April 26, May 16 and May 17, 2001. Both parties testified extensively and the court also heard testimony from Paul Scheinblum, the husband's accountant; Todd Houghton, the wife's son from a previous marriage; and his wife, Corine Houghton. The court also received 40 exhibits as well as post-trial memoranda. From the testimony and evidence presented and after carefully assessing the credibility of the witnesses, the court finds the following to have been proven.
The parties were married on May 17, 1997 in Tolland, Connecticut. There are no minor children issue of the marriage and no minor children have been born to the wife since the date of the marriage. Neither the state of Connecticut nor any town thereof has contributed to the support and maintenance of either party. The plaintiff has resided continuously in this state for more than twelve months immediately prior to the date of the complaint. The court finds that it has jurisdiction over the parties and the marriage. CT Page 10671
This is the second marriage for each party. The husband is 51 years old and his previous marriage of 25 years ended in divorce in 1995. He is subject to an order requiring that he pay $1,730 per month as alimony and $225 per week as child support pursuant to the judgment entered in that matter.
The husband owns a business known as Bolton Motors, Inc. He purchased the stock of that business for $43,500 in 1991. It was originally a used car dealership and small repair center. In February 1997 the plaintiff added trailer sales to the business. Now the income from the business is approximately 20% from trailers. In order to purchase the business, the plaintiff borrowed money against his first home. At that time he also obtained an option to purchase the physical plant and the land on which the business was located. In February 1996, the husband did purchase the land (4 and 6 Hillcrest Rd. and 7 Bolton Center Rd. in Bolton) on which the business is located and the adjoining property for a total of $359,000. A mortgage was placed on the property for $325,000 payable over fifteen years. Since the date of the marriage the mortgage principle on the property has been reduced by approximately $70,000. The husband leases the property to the business at the rate of approximately $992 per week which covers the payment of $983 per week on the mortgage for the property. The corporation also pays the taxes on the property. There is located a small single family home on the property where the plaintiff has lived rent free since November, 2000. The husband's sole income is from the business. His 1997 earnings were $113,780 and his 2000 earnings were $121,680. Although the plaintiff has no pension from Bolton Motors, the business contributes to his IRA. The current balance in his IRA is $60,933. Bolton Motors is a Subchapter S corporation solely owned by the plaintiff. As a Subchapter S corporation the business income or loss is passed through to the plaintiff and reported on his tax return. In 1997 Bolton Motors reported taxable income of $11,119; in 1998, income of $904; in 1999, income of $9,824; and in 2000, a loss of $11,114. The plaintiff's accountant believes that the business has no value and, if sold, the plaintiff would realize nothing. The plaintiff does value the business at zero on his financial affidavit.
The wife is 54 years old and her previous marriage of 25 years ended in divorce more than ten years ago. The wife is employed as a Senior Executive Administrative Assistant by United Technologies and has worked there for over 25 years. Her 1997 salary was $50,920 and her 2000 salary was approximately $57,200. Her pension will provide her with a monthly benefit of $1,958 at retirement at age 65. This benefit increased by $345 per month during the term of the marriage. She contributes $60 per week to her 401K plan which is matched by UTC. The defendant's UTC Employee Savings plan is valued at $85,940. At the time the parties met, the wife owned a condominium which she sold in July 1998 when the parties moved CT Page 10672 into their newly built home. It was not financially feasible to retain the condominium and rent it. It was sold for $119,000, less than was offered. The wife netted $14,802 from the sale. The husband never saw any of this money. The wife used this money for the benefit of her children and grandchildren.
The parties met in July of 1994. From the start their relationship was a stormy one. Between that time and their marriage in 1997 they broke off their relationship three times because of the wife's suspicions that the husband was having other relationships. They were engaged in June 1996. They broke up in December 1996 and the plaintiff moved out of the defendant's condominium. The defendant voiced her concerns with "trust" issues in her relationship with the plaintiff. In January 1997 the plaintiff asked the defendant to reconsider their relationship and he moved back in with the defendant and they began discussing marriage. The parties were married in May 1997. Even after their marriage, the defendant wife continued to accuse the plaintiff husband of having an affair. Although he would assure her he was not, she still suspected him of infidelity. Twice the wife concealed a tape recorder in their home with the goal of recording the husband's alleged illicit affairs, but the tapes revealed nothing.
In the fall of 1996 the parties started discussing building a home and on October 1, 1996 the husband deposited $1,000 to hold the lot on Steeplechase Drive in Manchester. The parties subsequently separated. After their marriage the parties signed a contract to build a house on the lot on June 13, 1997. Despite their accountant's advice to the contrary, both parties withdrew money from their retirement accounts in order to purchase the house. This caused the parties to incur substantial tax liability in 1998. The wife paid $18,855 to the IRS and the husband paid $5,890 to the state Department of Revenue Services. In order to make the payment to the IRS, the wife took a loan from her savings plan which she is currently paying back. The parties purchased the house on June 5, 1998 for $317,195. The husband contributed a total of $45,850 to the closing on the home. The husband paid for various additional improvements to the house such as a deck, brick walk, landscaping, and completion of a room over the garage. The wife took out $71,900 from her UTC savings plan which, after taxes, netted her $58,895. of that amount, she contributed $42,789 to the purchase of the house and the remaining $16,106 was used for the benefit of her children and grandchildren. The parties moved into the house on June 7, 1998.
The parties never had any joint finances or joint credit cards. The parties did file joint returns in 1997, 1998, and 1999. Usually, except for $18,855 to the IRS for the 1998 taxes the wife paid, the husband paid the parties' tax liabilities. The husband paid the wife $1,500 per month CT Page 10673 for the household expenses. The wife paid for the household furnishings from her income. Each carried their own substantial credit card debt.
The home on Steeplechase is approximately 3200 square feet. The husband moved out in July 2000 but agreed he would pay one-half of the mortgage, which he did, until December 2000 when the wife agreed she would make the payments. She did so in January and February 2001 but the husband has paid the mortgage since then because the wife stopped payment on her March mortgage payment. The mortgage presently has a balance of $247,000. The house is currently on the market for $399,900. The defendant continues to reside in the house and recently spent $1,268 to improve and maintain the landscaping.
Conn. Gen. Stat. Section 46b-81 provides that in a dissolution of marriage action "the Superior Court may assign to either the husband or wife all or any part of the estate of the other. In fixing the nature and value of the property, if any, to be assigned, the court. . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage. . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." Similar criteria apply to the determination of an award of alimony pursuant to Conn. Gen. Stat. Section 46b-82. "`The difference between an assignment of a specific portion of an estate and alimony is in their purposes. Clark, Domestic Relations (1968) § 14.8. The purpose of property assignment is equitably to divide the ownership of the parties' property. . . . On the other hand, periodic and lump sum alimony is based primarily upon a continuing duty to support.' (Citation omitted.) Blake v. Blake, supra,211 Conn. 497-98." Billings v. Billings, 54 Conn. App. 142, 149-150
(1999).
It was clear to the court that the wife sincerely believed that the husband was having an affair during their marriage. Yet her suspicions of infidelity started less than two weeks after they met when she drove by the husband's former wife's residence, when she had no reason to do so, and saw his car there. But there was insufficient evidence presented to the court that the husband, in fact, despite a roving eye, had other relationships during the term of the marriage. The wife also claimed that the husband attempted to harm her when he accidentally drove their ATV over her after she had fallen off the back but the wife never reported this incident to the police. Nor did she report to the police or seek a restraining order regarding the abuse which she alleged she suffered at the hands of the plaintiff. The plaintiff denies he ever hit the CT Page 10674 plaintiff or attempted to harm her. The parties engaged in marriage counseling beginning in May 1999 but it did not resolve the issues between them. The wife even attempted suicide from her distress regarding the marriage. The defendant is still treating with a psychologist and a psychiatrist. Thus, after observing both parties at trial, the court finds that the breakup of the marriage was caused by the actions of both parties, the wife's insecurity and continual suspicion of the husband and the husband's inability to provide her with the security she craved and to allay her suspicions.
The wife seeks both lump sum and periodic alimony. This is a relatively short marriage. Both parties are in good health, have steady employment and the ability to continue that employment. They both have retirement funds and assets that will provide them with income into their retirement. Although the wife claimed that she would not have sold her condominium but for the husband's desire to build a house, she realized a profit from the sale of the condominium which, rather than saving or contributing to the marriage, she gave to her children and grandchildren. The purpose of alimony is to provide for the support of a spouse. Weiman v. Weiman, 188 Conn. 232, 234 (1982). Considering the criteria in the statute, each party is able to provide for their support, as they did prior to and during the marriage, and an alimony award to either party is not necessary to ensure their future support.
As to the assignment of assets, in determining whether an asset of the parties is marital property subject to distribution by the court, the court must determine whether an asset was earned prior to or subsequent to the date of dissolution. Bornemann v. Bornemann, 245 Conn. 508, 521
(1998). The wife seeks a distribution of 20% of the gross receipts from all trailer sales and rentals of Bolton Motors for five years. Although the wife claimed she contributed to the husband's business by helping with computer input, yard work at the facility, advertising, and suggestions concerning product, her input was not significant in relation to his ownership and development of the business over the six years prior to their marriage. The wife also claims that during the term of the marriage the business had a significant increase in revenues because of the addition of the sale of trailers which she claims she urged her husband to do. But even before the marriage the husband had been exploring the addition of trailers to his business. In any event the increase in revenues has been offset by a corresponding increase in expenses, and the profits of the business, as noted above, have not increased significantly. In fact the husband's accountant testified that the business is worse off now than it was five years ago. Therefore the wife is not equitably entitled to a share in the business of Bolton Motors. CT Page 10675
Even though the language of Conn. Gen. Stat. § 46b-81 providing for the distribution of property in a dissolution proceeding grants the court authority to "assign to either the husband or wife all or any part of the estate of the other," the Supreme Court has determined that the statute involves the assignment of marital assets. Sunbury v. Sunbury,216 Conn. 673, 676 (1990). The parties here did not combine their finances and each maintained their separate income and credit cards after the marriage. The work of the parties each contributed to the increase in their respective assets but not to that of the other. The only asset the parties jointly contributed to was the house on Steeplechase. Each, by way of down payment and later improvements, have contributed approximately equally to the house and any equity should be shared equally.
The wife also seeks an award of attorney's fees. Conn. Gen. Stat. § 46b-62 permits an award of attorney's fees in a dissolution action. Such an award may be based on the parties respective financial abilities and the criteria set forth in Conn. Gen. Stat. § 46b-82. Both parties here have the ability to pay their own attorney's fees.
After taking into consideration the criteria required by the statutes and the application of those criteria to the facts found by the court, the court enters the following orders:
 1. A decree is entered dissolving the marriage of the parties on the grounds of irretrievable breakdown.
 2. This was a very short marriage and each party is able to support themselves as they both did prior to the marriage. Therefore alimony is not awarded to either party.
 3. The parties agree that the house at 81 Steeplechase Dive, Manchester should be sold. Upon the sale of the house all closing expenses including but not limited to real estate agent's commission, attorney's fees, conveyance taxes, payment of balance due on any encumbrances including the first mortgage, shall be paid in full. The remaining proceeds shall be divided equally between the parties. Until the house is sold, the plaintiff shall be responsible to pay the monthly mortgage payments, pro rated real estate taxes and insurance premiums regarding the house. Until the house is sold, the defendant shall have exclusive possession of the house and CT Page 10676 shall be responsible to pay all utilities and routine maintenance and other similar expenses regarding the house. The defendant shall cooperate with the real estate agent and keep the house available for showings at reasonable times. The plaintiff shall have sole discretion as to the ultimate sale price of the house.
 4. All furnishings and personal property located at 81 Steeplechase Drive shall be the property of the defendant.
 5. Each party shall retain all other assets in their possession and neither party shall have any claim to the other's pension, profit sharing plans, savings, IRA's or 401k's. The husband shall retain all his right, title and interest in Bolton Motors, Inc. and the wife shall relinquish any claim she has to this business as well as the property and buildings located at 4 and 6 Hillcrest Rd. and 7 Bolton Center Rd. in Bolton.
 6. The plaintiff shall be entitled to the deduction for all interest paid on the mortgage and taxes for the 2001 income tax year to the extent permitted by law.
 7. Each party shall be responsible for their own attorney's fees.
 8. The defendant wife's previous name of Ruth Chartier Houghton is restored.
Scholl, J.