[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Introduction
This is an action commenced by the plaintiff wife on February 29, 2000 seeking a dissolution of marriage on the grounds of irretrievable breakdown. She also claims an assignment of all or part of the estate of the defendant. On February 24, 2000 the defendant husband appeared by counsel. Trial was held on October 18 and 19, 2001. Both parties testified extensively and the court also heard testimony from Robert Stewart, an appraiser; Peter Kolb, a certified public accountant; DuWayne Nelson and Loretta LaFlamme, tenants of the parties' properties; Richard Carrier, a friend of the husband; John Russo, a restaurant broker; and Alyssa Noller, the plaintiffs daughter.
From the testimony and evidence presented and after carefully assessing the credibility of the witnesses, the court finds the following to have been proven.
Discussion and Findings of Fact
CT Page 623
The parties were mated on March 29, 1996 in Bloomfield, Connecticut. There are no minor children issue of the marriage and no minor children have been born to the wife since the date of the marriage. Neither the state of Connecticut nor any town thereof has contributed to the support and maintenance of either party. The plaintiff has resided continuously in this state for more than twelve months immediately prior to the date of the complaint. The court finds that it has jurisdiction over the parties and the marriage.
This is the first marriage for the husband who is 45 years old although he has a daughter from a previous relationship. He has a college degree and is a professional engineer for the state Department of Transportation where he has worked for nineteen years and earns $60,000 to $62,000 per year. He has a vested pension with the state of Connecticut which will pay a benefit of $1,500 per month at age fifty-five based on an annual salary of $63,000. The growth in this benefit form March 1, 1996 to October 1, 2001 is approximately $770. He also has money and annuity funds worth $8,483. On the side, the defendant has been involved in the purchasing and selling of real estate since 1979. He has made thousands of dollars in this business.
The wife is 47 years old and her previous marriage of 22 years ended in 1994. She has three children issue of that marriage: Glenn, 26; William, 25; and Alyssa, 22. Over the last fifteen years she has had multiple surgeries related to breast implants and there is the possibility of future surgeries. She received $50,000 as a member of the class action lawsuit against Dow Corning concerning implants. This was received during the first two years of this marriage. She now has no funds remaining from this settlement and claims that she used it to repair and remodel the couple's various properties. She has two years of college education. She has had various jobs over her lifetime including working as a paralegal when she earned about $63,000 per year. She has no pension or retirement benefits and lists approximately $5,000 in her savings and checking accounts.
The parties met in February of 1994. Until their marriage their relationship was good. But the wife relates that on the third day of their honeymoon their arguing began and the fighting between the parties continued throughout the marriage, sometimes turning violent. The plaintiff claims that the defendant made threats against her and physically assaulted her. The defendant claims the plaintiff threatened to kill them both.
The parties have an interest in a number of properties and it is the division of these properties which is the center of the parties' CT Page 624 dispute. The parties stipulated to the values of all these properties except 15 River Road, Willington, Connecticut.
The following properties were purchased by the defendant husband prior to the marriage:
1) 69-71 Milk Sweet, Willimantic, Connecticut is a six family dwelling built in 1900 and purchased by the husband in 1982. It is valued as of the date of the marriage, March 29, 1996, at $78,000 and as of October 3, 2001 at $99,000. There is now a mortgage on the property in the amount of $2,872.80. After the parties met they both worked on getting unsavory tenants out of the building and remodeling it. The plaintiff managed this property prior to and after the marriage and consequently she is responsible for a substantial part of its $21,000 increase in value during that time.
2) 11 Sylvester Street, Willimantic, Connecticut is a single family house built in 1880. It was purchased by the defendant in 1992. It is valued at $37,000 as of March 29, 1996 and at $69,000 on October 3, 2001. There is a mortgage and back taxes owed on the property of $14,375.34. DuWayne Nelson and his wife and three children have lived at 11 Sylvester Street for six years, since late 1995. At that time the inside was gutted and the defendant agreed that in lieu of a security deposit the Nelsons would help with the work needed on the house. The plaintiff provided the tenants with building materials and cash to do repairs to the building and personally did various renovation work. She also collected the rent and the tenants would go to her with any problems. Thus she was responsible for a substantial part of the $32,000 increase in the value of this property which occurred during the marriage.
3) Lot 1A Moose Meadow Road, Willington, Connecticut is unimproved land of approximately 40 acres which is valued at $82,000 on March 29, 1996 and $107,000 on October 16, 2001. It was purchased by the defendant in 1986. This land has been in defendant's family for a number of years and he bought it to keep it as undeveloped. There is a mortgage on the property in the amount of $29,501.00 which was secured so the parties could buy the Shenipsit Lake Road property.
The following property was purchased by the parties before their marriage:
4) 50-52 South River Road, Tolland, Connecticut is owned by both parties and was purchased in 1995. The defendant put $20,000 and the plaintiff put $12,000 towards the down payment. The property consists of two parcels with two houses on 25 acres. It is valued at $279,000 with a CT Page 625 mortgage of $111,542.00. The parties bought this property together and moved in there along with the plaintiff's son and daughter. They continued to live there until after the marriage. During the first year of their marriage Amy's pregnant daughter-in-law and grandson also moved in with them for about seven months. After the daughter-in-law's baby was born she moved out only to return about two months later, now with two babies. The parties used a $35,000 home equity loan on this property to finance the purchase of Stafford Road.
The following properties were acquired by the parties after the marriage:
5) 15 River Road, Willington, Connecticut is a four tenant retail center whose fee simple is valued at $230,000 and whose leased fee, that is, the value of the ownership interest held by a landlord with the rights of use and occupancy conveyed by lease to others, is valued at $120,000. The difference in value between the leased fee and fee simple is the below market rental rate being charged the parties' own business, the American Eagle Saloon Café. Since the value of the property is lessened by the pates' own failure to provide for a market value rental payment by their own business, which failure could be remedied by revising the lease, the court finds the value of the property to be $230,000. Besides the café, the property has two other tenants who presently pay $1,720 per month in rent. A third rental space is vacant. The property is owned by a limited liability corporation formed by the pates and was acquired in 2001 through the foreclosure of the mortgage. The parties had purchased the mortgage on the property from the bank in exchange for liens on other of their properties. There is an existing mortgage on the property in the amount of $109,629.30. On the property is located the American Eagle Saloon Café, which business the parties also purchased. They opened this bar in April of 1998. It was to be essentially the plaintiff's business. She and her daughter continue to work there now. The plaintiff would like to continue operating the business here although she doesn't want to be responsible for the property because the property is in poor condition.
6) 38 Old Colony Road, Mansfield, Connecticut is owned by the defendant and was purchased in 1997. It is valued at $137,000 with a mortgage of $48,380.00. Loretta LaFlamme has lived here with her husband and five children for two years. The plaintiff collected the rent from them and if there were any problems she would fix them. Since the pendente lite order, the defendant has been in charge of the property and has yet to fix the furnace which was damaged in a flood last summer.
7) 1308 Stafford Road, Mansfield, Connecticut is owned by both parties and was purchased in 1997. It is valued at $170,000 with a mortgage of $89,895.00. When the 6,000 square foot residence was purchased in CT Page 626 December, 1997, the parties and the plaintiff's daughter moved there from South River Road. In the spring of 1999 the defendant moved out of the house because of the pates' continuing problems. The plaintiff has done substantial work on the property including roofing, insulation, new windows, and electrical upgrades.
8) 391 Shenipsit Lake Road, Tolland, Connecticut is owned by both pates and was purchased in 1996. It is valued at $120,000 with a mortgage and back taxes owed of $38,342.33. The defendant put a $50,000 mortgage on the Moose Meadow Road property to purchase this property. In October 1996, a mortgage was put on this property so the parties could purchase the business known as the Meeting House Bar for which they paid $50,000. The plaintiff quit her job as a paralegal in January 1997 to run the bar. The bar was closed in August 1998 since it was losing money and they had purchased the American Eagle Saloon Café. The defendant currently resides in this property.
The American Eagle Saloon Café is run by a Limited Liability Company known as A.M.P.M. — Willington L.L.C. The plaintiff owns 80% of the company and the defendant owns 20%. The property on which the café is located, 15 River Road, is owned by A.M.P.M. Properties L.L.C. to which the café pays rent of $1,000 a month although the café paid rent of $1,800 to A.M.P.M. Properties for the months of January to June 2001. A.M.P.M. — Willington also gave the plaintiff a promissory note for $100,000, secured by the assets of the company, as repayment for the money and work the plaintiff had put into the business. The American Eagle Saloon Café grosses approximately $250,000 a year and the plaintiff takes a draw of $500 a week from the business. She also takes out approximately $122[1] per week (listed as bonus on her financial affidavit) to pay the mortgage on the Stafford Road house that she occupies. The business also pays $600 month for the plaintiffs 2001 GMC pickup which the plaintiff uses for business and personal purposes.
Although the plaintiff claims on her financial affidavit $747 per week as gross income consisting of her draw, mortgage reimbursement, and rent paid to her by her daughter, her bank records indicate that between December 1999 and September of 2001 she deposited into her savings and checking accounts on average over $6,800 a month, much of it in fairly regular deposits of cash. The plaintiff claims that much of these funds came from her regular gambling at the casinos as well as the sale of valuable Hummels she inherited from her mother. Neither the income from her gambling nor the value of any Hummel collection is listed on her financial affidavit.
The parties' accountant valued the American Eagle Saloon Café CT Page 627 business as worth $17,500, which his report describes as conservative. The defendant's expert, a restaurant broker, based his value of the café on a percentage of the sales and concluded that the business was worth about $66,000. In addition to the $622 per week the plaintiff claims as funds from the business she receives, the business also paid the mortgage on the defendant's house in the amount of $689 per month until April 2001. Clearly the business provides a source of fairly substantial income and therefore has a market value of $66,000.
General Statutes § 46b-81 provides that in a dissolution of marriage action "the Superior Court may assign to either the husband or wife all or any part of the estate of the other. In fixing the nature and value of the property, if any, to be assigned, the court. . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage. . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the pates in the acquisition, preservation or appreciation in value of their respective estates." Similar criteria apply to the determination of an award of alimony pursuant to General Statutes § 46b-82. "`The difference between an assignment of a specific portion of an estate and alimony is in their purposes. Clark, Domestic Relations (1968) § 14.8. The purpose of property assignment is equitably to divide the ownership of the parties' property. . . . On the other hand, periodic and lump sum alimony is based primarily upon a continuing duty to support.' (Citation omitted.) Blake v. Blake, supra,211 Conn. 497-98." Billings v. Billings, 54 Conn. App. 142, 149-150
(1999).
After observing both parties at trial, the court finds that the breakup of the marriage was caused by a number of factors attributable to the actions of both parties. Both parties have exhibited volatile tempers as well as physical and verbal abuse to the other. The marriage suffered additional pressures created by the cohabitation of multiple relatives of the wife with the couple. The plaintiffs daughter resented the parties' relationship and didn't like the defendant which also caused tensions between the parties. The defendant has been arrested and convicted of harassing the plaintiff and violating a protective order and is subject to a condition of his probation that he have no contact with the plaintiff. The court has considered the inadvisability of entangling the parties in continuing financial arrangements in framing its orders.
The wife, although with less education than the husband, is a smart and resourceful person. She has a variety of skills acquired from experience and training as a paralegal, manager of a bar, real property renovator, CT Page 628 and property manager. It is clear that she can well support herself despite the physical problems she has, and may continue to have, as a result of complications from her breast implants.
The wife seeks periodic alimony as well as a share of the husband's deferred compensation accounts and his pension. This is a relatively short marriage, the parties resided together for only about three years. Both parties are middle-aged, have steady employment and the ability to continue that employment as well as the skills to secure new employment in the future if necessary. The purpose of alimony is to provide for the support of a spouse. Weiman v. Weiman, 188 Conn. 232, 234 (1982). Considering the criteria in the statute, each party is able to provide for their support and an alimony award to either party is not necessary to ensure their future support. In addition, the distribution to the plaintiff of the business, as well as income producing property, will afford her the resources to secure her support. As to the plaintiffs request for a share of the defendant's pension, pension benefits are property subject to distribution pursuant to General Statutes § 46b-81, and will be considered as part of the distribution of the marital assets. Krafick v. Krafick, 234 Conn. 783 (1995).
In determining the distribution of marital assets, "`[t]here are three stages of analysis regarding the equitable distribution of each resource: first, whether the resource is property within § 46b-81 to be equitably distributed (classification); second, what is the appropriate method for determining the value of the property (valuation); and third, what is the most equitable distribution of the property between the parties (distribution).' [Krafick v. Krafick, 234 Conn. 783,792, 663 A.2d 365 (1995)] Id., 792-93." Lopiano v. Lopiano, 247 Conn. 356,364 (1998). There is no dispute here that the assets identified by the parties as marital assets are "property." Their values, except for the café and the property on which it is located, have been stipulated to. The issue is then is what is an equitable division of the property. It is the court's view that in light of the fact that both parties contributed to the "acquisition, preservation or appreciation" of the parties' real property and that fault for the breakdown of this marriage falls on both parties, a fairly equal division of the marital assets is appropriate.
The wife also seeks an award of attorney's fees. Conn. Gen. Stat. § 46b-62 permits an award of attorney's fees in a dissolution action. Such an award may be based on the parties respective financial abilities and the criteria set forth in Conn. Gen. Stat. § 46b-82. Both parties here have the ability to pay their own attorney's fees.
Orders
CT Page 629
After taking into consideration the criteria required by the statutes and the application of those criteria to the facts found by the court, the court enters the following orders:
1. A decree is entered dissolving the marriage of the parties on the grounds of irretrievable breakdown.
2. Alimony is not awarded to either party.
3. The real property of the parties is divided as follows and all transfers required by this order shall be completed within sixty days of the date of judgment:
a. The defendant shall retain the property at Moose Meadow Road, Willington, Connecticut. The defendant owned this property prior to the marriage and the plaintiff had no part in its increase in value during the marriage. Therefore, pursuant to the criteria of General Statutes § 46b-81, the property shall remain that of the defendant and the court has not considered it as part of the marital estate to be divided between the parties. The defendant shall hold the plaintiff harmless from any liability she may have on the mortgage on said property. The court has also considered, in the distribution of the marital assets, that the defendant will assume fully the mortgage, which was secured for the benefit of the parties, on this property.
b. The defendant shall retain the property at 60-71 Milk Sweet, Willimantic, Connecticut. Both parties, in their proposed orders, agree that the defendant should retain this property which he also owned prior to the marriage. There is presently $96,127.20 in equity in the property. The property increased in value $21,000 during the term of the marriage, and the plaintiff and defendant were both responsible for this increase. It is this amount that the court has considered when evaluating it as part of the marital estate. The defendant shall hold the plaintiff harmless and indemnify her against any liability she may have on the mortgage on said property.
c. The defendant shall retain the property at 11 Sylvester Street, Willimantic, Connecticut with equity of $54,624.66. The property increased in value $32,000 during the term of the marriage and the plaintiff, with the tenants' assistance, was responsible for a substantial amount of this increase. It is this amount that the court has considered when evaluating it as part of the marital estate. The defendant shall hold the plaintiff harmless and indemnify her against any liability she may have on the mortgage on said property as well as any unpaid taxes. CT Page 630
d. The plaintiff shall transfer her interest in 50-52 South River Road, Tolland, Connecticut to the defendant. The equity in the property is $167,458. The defendant shall hold the plaintiff harmless and indemnify her against any liability she may have on the mortgage on said property.
e. The defendant shall transfer his interest in 1308 Stafford Road, Mansfield, Connecticut to the plaintiff. There is $80,105 in equity in this property. The plaintiff shall hold the defendant harmless and indemnify him against any liability he may have on the mortgage on said property.
f. The plaintiff shall transfer her interest in 391 Shenipsit Lake Road, Tolland, Connecticut to the defendant. There is $81,657.67 in equity in this property. The defendant shall hold the plaintiff harmless and indemnify her against any liability she may have on the mortgage on said property as well as any unpaid taxes.
g. The defendant shall transfer his interest in the property at 38 Old Colony Road, Mansfield, to the plaintiff. There is $88,620 in equity in this property. The plaintiff shall hold the defendant harmless and indemnify him against any liability he may have on the mortgage on said property.
h. The defendant shall transfer his interest in A.M.P.M. Properties, LLC which owns 15 River Road, Willington, Connecticut to the plaintiff There is $120,371 in equity in that property. The plaintiff shall hold the defendant harmless and indemnify him against any liability he may have on the mortgage on said property.
A summary of the distribution of the real property follows:
Plaintiff
1308 Stafford Road, Mansfield — $ 80,105 38 Old Colony Road, Mansfield — $ 88,620 15 River Road, Willington — $120,371 Moose Meadow Mortgage (1/2) — $ 14,750
Total: $303,846
Defendant
60-71 Milk Street, Willimantic — $ 21,000 50-52 South River Road, Mansfield — $167,458 391 Shenipsit Lake Road, Tolland — $ 81,657 CT Page 631 11 Sylvester Street, Willimantic — $ 32,000 Defendant's Contribution to purchase of 50-52 South River Road — $ (8,000)
Total: $294,115
4. The defendant shall transfer his interest in A.M.P.M. — Willington, doing business as the American Eagle Saloon Café to the plaintiff.
5. The defendant shall transfer, by way of QDRO, twenty-five per cent of the value, as of October 1, 2001, of his Connecticut State Employees Tier I, Plan B, monthly pension benefit to the plaintiff.
6. The plaintiff shall retain her 1992 Chevrolet and the 1985 Porsche 944 which was a gift to the plaintiff from the defendant. The defendant shall retain his 1987 Nissan Sentra, backhoe and bulldozer.
7. Each party shall be responsible for the debts listed on his or her financial affidavit.
8. The plaintiff shall pay the defendant $2,000 as his share of the $8,000 tax refund deposited into the plaintiffs People's Bank account on March 16, 2001.
9. Pursuant to the agreement of the parties, the plaintiff shall transfer to the defendant the grandfather clock, Pontiac, stained glass window and all personal records, documents and vehicle titles belonging to the defendant. The plaintiff will also transfer the following items to the defendant if they can be located: his wedding band, a Maxwell Parish Calendar, and a print of a shepard and sheep in a black frame.
10. Each party shall be responsible for their own attorney's fees.
11. The defendant wife's previous name of Amy G. Moore is restored.
 ___________________, J. Scholl